CHARLES I. WOOSTER

*v.*

WILLIAM T. COOPER and ISAAC. COOPER et al.

[Filed January 30th, 1900.]

1. A demand will be held to be *res adjudicata*, when by a former decree or judgment, the same claim, based upon the same muniment of title, between the same parties, touching the same subject-matter, has been determined by a competent court.

2. The fact that a certain effect of a muniment of title presented in both suits, is in argument more especially urged in the second suit, or that in the opinions of the judges who determined the first suit, that effect is not discussed, will not prevent the former decree or judgment from operating as an estoppel, where the issues presented by the pleadings or findings of fact in the previous suit are broad enough to include the matter sought to be litigated in the second.

3. Where the former judgment and the issues being tried in the later cause are upon *the same demand between the same parties*, the former judgment, if rendered on the merits, is a bar to the second action, not only as to every matter which was offered and received to sustain or defeat the claim, but as to any other admissible matter which might have been offered for that purpose.

Wooster *v.* Cooper.

4. A power to dispose of lands given to be exercised *inter vivos,* will not be held to be well exercised by the last will of the donee, in favor of a volunteer. Especially where the enforcement of such an attempted exercise of the power will defeat a gift over expressed in the donor's will.

5. *Quære.* Should a general devise in the will of a donee, disposing of her own property and not in any way referring to the power to dispose of lands, be held to be an exercise of the power solely because the donee owned no lands at the time her will was made? Since the act of 1851 (*Gen. Stat. p. 3761 § 24*), a general devise will dispose of lands acquired by the testatrix after the making of the will, and such a devise would be fully fed by an intent on the part of the testatrix to pass such after acquired lands, without relating it to the lands within the power.

6. Where all the beneficiaries, who are distributees of the proceeds of the sale of land directed to be sold under a power, join in asking a conveyance of the lands to themselves, according to their distributive shares, instead of making a sale under the power, and such a course does not substantially conflict with the purpose of the gift, a conveyance by the donee of the power will be decreed by this court to be made.

On cross-bill, answer and proofs.

This cause has now come to a hearing on the amended cross-bill of Isaac Cooper, and the answer thereto of Charles I. Wooster as defendant.

Mr. Wooster filed the original bill in this cause as complainant, as one of the executors of the will of Benjamin D. Cooper, and executor and residuary legatee and devisee of Tacy Cooper, against Isaac Cooper and others, who claimed, under the will of Benjamin D. Cooper, property which Mr. Wooster alleged had passed by Tacy Cooper's will to him.

The original bill sets forth in full the will of Benjamin D. Cooper. The only clauses which are necessary to be passed upon are as follows:

"I order and direct that all my just debts and funeral expenses shall be paid by my executors or the survivor of them as soon as conveniently can be after my decease.

"I order and direct that all my estate real, personal and mixed, shall during the life of my beloved wife Tacy Cooper, should she survive me, pass into her hands and be subject to her sole management and control to keep and use or sell and dispose of the same as she shall see fit, and my executors hereafter named shall not during the said time be responsible therefor.

"From and after the death of my wife should she survive me, otherwise from and after my death, all my estate real, personal and mixed which shall then remain, I order and direct my executors hereafter named or the survivor of them to dispose of as soon as conveniently may be thereafter as follows:

"My secretary to my nephew William T. Cooper, son of Warner T. Cooper; my book-case and desk to my nephew Warner Cooper, son of Warner T. Cooper; and all the balance of my estate real, personal and mixed that may then remain to sell and dispose of for the best price that can be gotten therefor at public or private sale to such person or persons as my said executors or the survivors of them shall see fit; and the proceeds arising therefrom after deducting all reasonable costs and charges to pay as follows: to wit, that arising from the sale of my farm, crops, stocks and farming utensils to pay in equal proportions to my niece and four nephews to wit: William Cooper and Isaac Cooper, sons of Clark Cooper; Anna J. Cooper, William T. Cooper and Warner Cooper, daughter and sons of Warner T. Cooper, share and share alike, to have and to hold to them, their heirs and assigns forever.

"And that arising from the sale of the balance thereof to pay as follows, to wit: To my nephew, Leander B. Joyce, five hundred dollars, to have and to hold to him, his heirs and assigns forever; to my niece Sarah Leeds, two hundred dollars to have and to hold to her, her heirs and assigns forever; To my niece Tacy Burk, two hundred·dollars, to have and to hold the same to her, her heirs and assigns forever; To my niece Martha Jennette two hundred dollars, to have and to hold to her, her heirs and assigns forever; two thousand dollars of that arising from the sale of the said balance shall be invested by my said executors and kept invested by them or the survivor of them in good and sufficient securities during the life of my niece Hannah T. Prickett, wife of Ridgway Prickett, and the incomes and profits thereof paid to her by my said executors or the survivor of them semi-annually to have and to hold the said incomes and profits to her sole and separate use forever; At the decease of the said Hannah T. Prickett, should she survive me, and also my beloved wife, otherwise at the death of the survivor of my wife and me, to pay to Walter Prickett son of my said niece, Hannah T. Prickett, one thousand dollars, to have and to hold to him, his heirs and assigns forever; All the remaining portions arising from the sale of said balance to pay in equal proportions to my two nephews and niece Charles I. Wooster, Benjamin C. Wooster, and Ida A. Parker, sons and daughter of Ira Wooster, share and share alike, to have and to hold to them, their and each of their heirs and assigns forever.

"And for the better effecting the purposes aforesaid I hereby authorize and empower my executors aforesaid or the survivor of them, to sign, seal, execute, acknowledge and deliver all such deed or deeds, conveyances, transfers and assignments as may be requisite and necessary for the granting, assigning and setting over the lands and real estate, bonds, mortgages, stocks and other investments and securities to the purchaser or purchasers thereof in fee-simple or otherwise and without any liability on the part of such purchaser or purchasers as to the non-application or mis-application of the purchase-money."

The will of Benjamin D. Cooper was probated March 4th, 1883, by the executors therein named.

The bill also sets forth the will of Tacy Cooper, widow of Benjamin, which is in these words:

"I, Tacy Cooper of the City and County of Camden, State of New Jersey do make and publish this my last will and testament as follows:

"After the payment of my just debts and funeral expenses, I give, bequeath and devise all my property, both real and personal wherever situate, and whatever the same may be, to my nephew Charles I. Wooster, of the Village of Berlin, to him and his heirs forever.

"I hereby nominate and appoint Charles I. Wooster executor of this my last will and testament.

"In Witness whereof I have hereunto set my hand and seal this nineteenth day of June A. D., eighteen hundred and ninety-three.

"TACY COOPER.   [Seal.]

"Signed, sealed, declared and published by the said Tacy Cooper to be her last will and testament in the presence of us, who were present at the same time, and subscribed our names as witnesses in the presence of the testator and in the presence of each other and at the request of the testatrix.

"GEORGE J. BERGEN
"MARTIN V. BERGEN, JR."

The will of Tacy Cooper was probated by Charles I. Wooster, executor, on March 20th, 1894.

In order that the questions of *res adjudicata* argued in this cause may be properly considered, it is necessary that the previous litigations of the parties, in which it is contended their present dispute has been adjudged, should be shortly examined. In the original suit in this court, between the parties, the complainant (Wooster), alleged that, "according to the law of the land, the estate of Benjamin D. Cooper passed by the will of Tacy Cooper to the said Charles I. Wooster, and the other parties [defendants] have no interest therein." The bill further alleged that the defendants had obtained possession of some of the moneys of the estate of Benjamin D. Cooper, for which they refused to account, and prayed a decree be made declaring that "the estate of Benjamin passed to and is the sole and separate property of the complainant by the will of the said Tacy Cooper," and for an accounting and payment of the

amount found to be due from the defendants, and directing that they convey to the complainant all their pretended right in Benjamin's estate.

The litigating answer of the defendant Isaac Cooper denies that the estate of Benjamin passed by the will of Tacy to Wooster and denies that the defendants have no interest therein. On the contrary, the defendant Isaac Cooper asserts that the estate of Benjamin, on Tacy's death, vested in the defendants. In his answer he avers.

"that upon the true construction and meaning of the said will of the said Benjamin D. Cooper the quantity of estate by the said Tacy Cooper is therein expressly defined to be for life, and that the superadded words are to be construed to be a mere gift of a power of disposition, and that the said Tacy died without having exercised the said power of disposition with respect to the estate of the said Benjamin D. Cooper or any part thereof, and thereby this defendant and other parties, &c., became entitled to the estate of Benjamin D. Cooper, pursuant to the terms of his said will."

It was on these pleadings that the cause came to the hearing on which the decree of October 17th, 1895, was made, to the effect that by the true construction of Benjamin's will, Tacy took but a life estate in both his real and personal, and that upon her death his estate went to Benjamin's legatees, unaffected by the will of Tacy, in the pleadings mentioned. The same decree, however, declared that a cross-bill was necessary to the complete determination of the matter in controversy and gave leave to the defendant Isaac Cooper to file such a bill.

An appeal was taken from this decree, and it was affirmed by the court of appeals. The opinion is reported in *8 Dick. Ch. Rep. 632.* Upon the coming in of the remittitur affirming the decree of this court, the defendant Isaac Cooper filed the cross-bill authorized by that decree.

In the cross-bill, Isaac Cooper alleges that Charles I. Wooster and William T. Cooper, the executors of Benjamin D. Cooper's will, had paid his debts, delivered the specific legacies and paid most of the money legacies; that they bought in under the foreclosure of the Evans mortgage (held by Benjamin in his lifetime) the mortgaged premises by deed made to them jointly as

executors, and now hold the legal title to the same; that all of the beneficiaries under the second power in Benjamin's will survived Tacy Cooper, who died on February 24th, 1894. He then charges that, according to the true construction of Benjamin's will, Tacy took but a life estate in his property; that upon her death his legatees became entitled to all of it then remaining; that the farm (described in several tracts) and the proceeds of the executors' sale of the crops, stock and farming articles remained, the said Tacy not having kept and used or sold and disposed of the same in accordance with the power and authority in that behalf contained in the said will of the said Benjamin, and that by reasons thereof the complainant and the other legatees of the proceeds of the farm, the crops, utensils, &c., became entitled to those proceeds; that the farm, because of its proximity to a growing town, has a special and fast-increasing value. The complainant prays that the trusts created by Benjamin's will may be declared and enforced; that the interest of the complainant and others interested with him in the proceeds of the farm, the crops, stock and farming utensils, upon the death of Tacy, may be ascertained and declared; that an account may be taken of the real and personal estate whereof Benjamin D. Cooper died seized which came to the hands of the executors or either of them, and of the expenditures and disposition of the same by the said executors or by either of them; that the executors may be decreed to convey the farm to the complainant and others interested instead of selling it and dividing the proceeds among them; that the proceeds from the sale of several elements of the personal estate of Benjamin D. Cooper remaining at the death of Tacy Cooper may be ascertained and applied according to the directions of Benjamin's will.

To this cross-bill of Isaac Cooper, there is but one litigating answer, that filed by Charles I. Wooster (one of the executors of Benjamin D. Cooper's will), who is also, as above stated, the sole beneficiary under the will of Tacy Cooper, and was the complainant in the original bill of complaint. In his answer to the cross-bill Charles I. Wooster alleges that Tacy Cooper possessed herself of Benjamin D. Cooper's real and personal

14

estate and regarded it and treated it as her own ; that when he
(Wooster) paid the debts of Benjamin, it was by Tacy's personal
direction so to do, as her agent, and at her request ; that Tacy, and
not he, delivered the specific legacies.   He denies that there is
any residue of Benjamin's estate in his hands, alleging that Tacy
assumed control and disposed, under the terms of Benjamin's
will, of the entire residue, if any there was, of Benjamin's estate.
He denies that he and his co-executor together hold the title to
the Evans farm under the foreclosure, and insists that under
the terms of the wills of Benjamin D. and Tacy Cooper he alone
owns the title under Tacy's execution by her will of the power
bestowed upon her by the will of Benjamin.   He admits that
by the true construction of the will of Benjamin, Tacy took a
life estate, but denies that the complainant and others took the
real estate as claimed, and avers

"that the said Tacy Cooper by the terms of Benjamin's will, acquired an
absolute and unlimited power to dispose of all of deceased (Benjamin's) prop-
erty real and personal;   *   *   *   that the said Tacy actually exercised that
power by her last will and testament set out in the bill, and devised all of the
said real estate to the said Wooster, whereby he became and is sole owner of
all of the said property,"

and the rents and profits of the real estate, and also the personal
property left by Benjamin passed into Tacy's hands, and was by
her wholly used and disposed of during her lifetime as by Ben-
jamin's will she was authorized to do, and that at the death of
Tacy there was no undisposed of property of Benjamin.

Issue was joined, and the parties came to a hearing on the
cross-bill and this answer.   On the opening of the cause, an
examination of Benjamin D. Cooper's will showed that he had
devised but a life estate to his widow Tacy, and had created two
successive powers of sale, but had not devised the fee of his lands
to anyone.   The title to the fee had therefore descended to the
heirs-at-law of Benjamin, subject to a life estate devised to Tacy,
and subject also, first, to the exercise of the power of disposition
given to Tacy, and second, to the power of sale given to the
executors.   A further examination of the pleadings showed that
the heirs-at-law (whose title one party claimed had been devested

by the exercise of the power of sale given to Tacy, and the other party sought to devest, by the exercise of the power given to the executors), were not parties to the suit.   The vice-chancellor declared that the heirs-at-law, whose title both the litigants sought to take away, were necessary parties, and laid the cause over until they should be brought into court.   *Wooster* v. *Cooper, 11 Dick. Ch. Rep. 759.*

Shortly after this decision, the heirs-at-law of Benjamin D. Cooper were made defendants by amendment to the cross-bill. In the amended cross-bill the interest of the parties in the farm, proceeds of crops, &c., is defined as follows in the eighth paragraph:

"According to the interpretation of the will of Benjamin D. Cooper, Tacy Cooper, his widow, at her decease * * * took a life estate thereunder in his estate * * * that upon her death the legatees named in his will became entitled to all of the said estate then remaining."

It is further alleged in the amended cross-bill that the farm and proceeds of sale of crops, &c., then remained, the said Tacy not having kept and used or sold or disposed of the same, in accordance with the power contained in Benjamin's will, and thereby the interest of the complainant, Isaac Cooper, and those claiming with him in the farm, &c., accrued.   That the farm is by reason of its nearness to a large town readily divisible into lots, and is more valuable to the beneficiaries as land than the proceeds of its sale would be.   The cross-bill sets forth the previous litigation on the original bill and the decree therein pronounced.   It prays that the will of Benjamin D. Cooper may be fully executed; that the executors may convey the farm to Isaac Cooper and others interested, &c., according to their several shares instead of selling it; that an account may be taken of the estate of Benjamin, remaining at the death of Tacy, and the estate may be applied according to the directions of his will, &c.

The defendant Charles I. Wooster answered the amended cross-bill in detail, again stating his defence, and for the first time declaring in specific terms

"that Tacy Cooper, in and by the instrument in writing aforesaid [her will, which is set out again in full], and in her lifetime, fully and completely disposed of all the property of Benjamin"

to the said Wooster, and that he held the same free of all trusts. The answer to the cross-bill alleges that

"at the time of the execution of the above instrument in writing [her will] Tacy had no property of her own, and *that by that instrument she intended to dispose of and deliver, and did dispose of and deliver to Wooster the whole of the property of Benjamin D. Cooper,*"

and that since her death the said Wooster has been in possession, &c., and all rights of the heirs and legatees of Benjamin D. Cooper set forth in the cross-bill are denied.

This cause then remained for a time in repose, and before the issues joined in this court came to a hearing, Wooster, the defendant in the cross-bill, prosecuted to judgment an ejectment suit in the supreme court for the farm in question, which he had brought against Fitzgerald, the tenant in possession, and against Isaac Cooper and the other defendants who claim the farm. The cause was tried by the court without a jury. By agreement the trial judge found the facts specially, and certified them to the supreme court for argument and determination as to what judgment should be rendered. The supreme court, on the argument as to this judgment, had before it the special facts found, and this finding recited full copies of the will of Benjamin D. Cooper and of Tacy Cooper. It stated the death of Benjamin ; that Tacy Cooper, his wife, took possession and demised the farm to the tenant, Fitzgerald, for one year, who held over his term, and in paragraph 4 of the special finding are these words :

" *That on the 19th day of June, 1893, said Tacy Cooper executed and delivered* to plaintiff [Charles I. Wooster] the following instrument in writing [here follows a copy of Tacy's will as above recited, dated June 19th, 1893], which instrument of writing was admitted to probate in due form of law by the surrogate of the county of Camden, and letters testamentary were duly issued to this plaintiff."

The finding further declares that Tacy never had any real estate, lands or tenements of her own, and then recites the pro-

ceedings in this cause up to the decree of October, 1895, and its affirmation on appeal to the court of appeals.

The supreme court, on the special facts certified, determined that Wooster, the plaintiff in the ejectment suit, was not entitled to recover the farm and gave judgment against him. The case is reported as *Wooster* v. *Fitzgerald, 32 Vr. 368.* Writ of error took this judgment to the court of errors and it was there affirmed (*Wooster* v. *Fitzgerald, 32 Vr. 688*), and a rehearing in that court was, on petition filed therefor, refused to Mr. Wooster.

*Mr. James Buchanan,* for Isaac Cooper, complainant in the cross-bill.

*Mr. Robert S. Clymer,* for William T. Cooper and others.

*Mr. John J. Crandall,* for the defendant in the cross-bill, Charles I. Wooster.

GREY, V. C.

This cause came to the present hearing upon the amended cross-bill of Isaac Cooper (one of the defendants in the original bill), and the answer of Charles I. Wooster (the complainant in the original bill) to that amended cross-bill.

The first question presented is the contention of the complainant in the cross-bill, that the matters now sought to be litigated have already been determined by the previous decree made in this cause on October 17th, 1895, and by the above-cited judgments in the supreme court and in the court of errors.

The due consideration of this dispute requires an ascertainment of the matters now in litigation in this cause, and an examination of those previously adjudged. If the same matters here and now sought to be litigated, were determined by the previous decree and judgment, they cannot be here again considered.

There can be no denial that the matters in dispute by the issues joined on the amended cross-bill and the defendant Wooster's answer thereto, presently before this court, are between the same parties, touching the ownership of the same property,

by the operation of the same instrument which was presented on the former hearing in this cause. The defendant Wooster insists that the decree on that hearing, though against him, is not conclusive, because he says that in the original bill upon which the decree was made, the will of Tacy was presented as a devise of an estate which had vested in her, or at most as the execution of a power which she had authority to exercise by her last will. He contends that the former decree simply declared that Tacy had no power to devise the farm, or to dispose of it by her will operating after her death, whereas in the cause now being heard, he insists Tacy's will is offered as an instrument in the nature of an appointment, which operated upon the delivery of it by Tacy, *inter vivos*, to Mr. Wooster.

In order, therefore, to decide whether the same demand now presented was adjudged by the decree of October 17th, 1895, it is only necessary to ascertain whether the claim now insisted upon was within the scope of the former decision.

In the original bill on which that decree was founded the complainant, Wooster, showed that he was one of the executors of Benjamin D. Cooper's will, and was also sole legatee and devisee under the will of Tacy Cooper. That bill also set out the wills of both Benjamin and Tacy, and asked a decree declaring that by the will of Tacy, according to the law of the land, all of Benjamin's estate passed to the complainant (Wooster), and that the defendant Isaac Cooper and others had no interest in any of it, &c., and directing that they convey their pretended interest in that estate to Wooster.

The defendant Isaac Cooper, by his answer, denied these contentions as to the effect of the wills set forth, and insisted that under Benjamin's will Tacy took but a life estate in Benjamin's property, with a power of disposition which she never exercised, and that on her death, Benjamin's estate which then remained passed to him, Isaac Cooper, and others.

The allegations of Mr. Wooster in the original bill on which the decree was pronounced were not limited, as his counsel now contends, to an assertion that Tacy took a fee in Benjamin's property, which she devised to Mr. Wooster. On the contrary,

the charges in that bill broadly assert that the complainant re-
ceived title to Benjamin's property by the operation of Tacy's
will.    It is quite obvious that Tacy could not pass Benjamin's
estate by her will, unless it were done by the exercise of some
power of disposal given her by Benjamin's will, and as both
wills are set out in the bill at length, the averment must be con-
sidered with reference to their provisions.    The allegation does
not specify what estate Tacy took, nor does it define in what
mode Tacy's will operated to pass Benjamin's estate.    The state-
ment that it did pass Benjamin's property is broad enough to
support a contention by the complainant that Tacy's will passed
the property to him, either as an execution of the power *inter
vivos,* by delivery of that instrument to the complainant, or
after her death as an execution of the power by her last will.

The defendant's answer in response to this allegation insists
that the true meaning of the will of Benjamin is that it gave to
Tacy but a life estate and a power of disposition which she did
not exercise.    The issue thus tendered was a matter of law de-
terminable by the construction which the court might put upon
the two wills which were submitted, but the defendant also
averred that Tacy did not exercise the power of disposition.
This sets up a matter of fact, responsive to the complainant's
(Wooster's) allegation, that Tacy's will passed the title to Benja-
min's property to him.    It declares that Tacy never exercised
the power in any mode or at any time, and thus asserts that the
incidents essential to a disposition by Tacy, if made *inter vivos,*
such as the making and delivery of an appointment to Wooster
in her lifetime in execution of the power, never happened.    It
is an averment which, if true, made it impossible that Tacy
could ever have done any act *inter vivos,* or operating by way
of a will, in the nature of an appointment, by which she dis-
posed of Benjamin's property by passing it to the complainant,
Wooster.

The cause was set down for hearing on bill and answer.    In
such cases the answer must be taken to be true in all points.
*Gen. Stat. p. 379 ; Chan. Act. p. 143.*

It is insisted that the averment in the answer of Isaac Cooper

to the original bill—that Tacy had but a life estate and a power of disposition, and that she did not exercise the power—is extraneous matter, voluntarily brought before the court by the defendant and not pertinent to the allegations of the bill. This contention cannot be supported. The complainant (Wooster) invited the defendants into court, alleging that the property of Benjamin has passed to him (Wooster) by the will of Tacy, setting forth both wills, charging that Cooper was making false claims to the property and asking a decree that Cooper and those claiming with him should refrain from interfering with it, and that they might be compelled to convey their pretended interest. In meeting such charges, Cooper and those with him were justified in denying Wooster's title and in setting forth any fact which would support their own claims and prevent a decree depriving them of their title. It appeared by Benjamin's will that Tacy had a power of disposition which was superior to that under which the defendant Cooper and others claimed. If Tacy's power had in fact been exercised, then the defendant had no equity. He expressly declared in his answer, in words broad enough to cover any mode of exercising the power, that Tacy had made no disposition. This allegation in the answer to the original bill was a pertinent and responsive averment in denial of the complainant's claim of title and in support of the defendant's claim of title.

The issue joined was, therefore, whether Tacy's will operated in any manner to pass Benjamin's estate to Mr. Wooster. The extent of the decree must be held to be as wide in its scope as are the pleadings upon which it is based. The claim made was that Tacy's will (set forth in words at length), operating in some way (not specifically defined), passed title to Wooster, and the defendant denied that the instrument had such operation, and further denied that she ever executed the power which it is now claimed was exercised by her will operating as an *inter vivos* appointment.

The matter determined by the decree is fairly expressed by its own phrasing. It adjudged and decreed

Wooster *v.* Cooper.

"that upon her [Tacy's] death all the said testator's real, personal and mixed then remaining became vested in the legatees, in his [Benjamin's] said will named, and said legatees then became entitled thereto, and the same should be distributed pursuant to the terms of his will, unaffected by the will of his said widow, Tacy Cooper, in the pleadings mentioned."

The effect of this decree was to adjudge that on Tacy's death the estate passed under Benjamin's will to his legatees, and that the instrument set forth in full as Tacy's will in nowise affected this devolution of title by operating in any way to pass title to Mr. Wooster. This is the matter now presented by the defendant Wooster under the amended cross-bill, and having thus been once adjudicated and in this very cause, it cannot be again submitted to the consideration of the court.

At the stage of litigation at which the decree of October 17th, 1895, was made, while the pleadings appeared to raise the question of title to the whole estate of Benjamin D. Cooper, the case was in fact not then so presented that the court's decree was effective to determine the disputes between the parties as to his real estate. At that time the heirs-at-law of Benjamin, to whom the title to his real estate had descended, subject to the exercise of the powers of sale, were not parties to this suit, nor did the pleadings then on file show that any equitable relief was sought which justified this court in passing upon that title. For these reasons the decree, in its operative effect, extended only to the personalty part of Benjamin's estate. The court of appeals has declared this to have been its extent, and that it could not work an estoppel in an action of ejectment to recover the lands of Benjamin. *Wooster* v. *Fitzgerald, supra.* That court, however, clearly intimates its opinion that the decree did work an estoppel against Mr. Wooster as to the personalty portion of Benjamin's estate. The decree must be held to have finally adjudicated and settled adversely to Mr. Wooster his claim that he took Benjamin D. Cooper's estate under the will of Tacy so far as that claim applied to Benjamin's personal estate.

This is *res adjudicata* and no longer open for argument or consideration. This was the effect of that decree upon the parties then before the court, upon the pleadings as then presented.

The complainant (Wooster) and the defendant Isaac Cooper were then parties to this suit and are both bound by that decree.

It remains to be determined whether the disputes between the complainant (Cooper) and those associated with him, asserting their interest under Benjamin D. Cooper's will in the proceeds of the sale to be made of the real estate whereof he died seized, and of the defendant Charles I. Wooster claiming to own that real estate under the operation of the will of Tacy, have been so adjudicated by a competent tribunal that this court should recognize those questions as finally settled.

The introduction into the cross-bill of the prayer for the conveyance of the farm lands to the interested beneficiaries, rather than their sale and the payment of the proceeds to them, brought in a new element of equitable jurisdiction, namely, the enforcement of a trust power, necessarily involving the determination of the title to the farm lands, and the vitality of the power of sale given in the will of Benjamin to the executors, which, under this new feature of the case, it was claimed should be used to pass the title of these lands to those beneficiaries named in his will, as distributees of the proceeds to arise from its sale by the executors.

By the terms of Benjamin D. Cooper's will, the fee of his farm remained undisposed of and descended to his heirs-at-law. In order to consider the new question presented by the cross-bill, it was obvious that the heirs-at-law of Benjamin to whom the fee of the farm had descended must be in court, for the exercise of the power of sale, by conveyance either to the beneficiaries or to strangers, would divest these holders of their ownership. The holders of the title, the heirs-at-law, not being parties to the cross-bill, the case was laid over that they might be brought in, and this was done by the amended cross-bill, which the defendant Wooster answered again as above cited, now setting up his claim that he took the lands in question by the effect of the will of Tacy operating as an execution of the power *inter vivos*.

It will be remembered that the former decree for want of proper parties, and of equitable jurisdiction at that stage of the

litigation, was effective only to the extent of Benjamin's personalty.  The complainant in the amended cross-bill insists that the defendant Wooster's claim is also *res adjudicata* as to Benjamin's real estate.   This contention is based not upon the effect of the former decree, but upon the judgment of the supreme court, pronounced in the ejectment suit brought by Wooster against Fitzgerald, the tenant of the farm, and Isaac Cooper and others.   This ejectment suit came to judgment after the amended cross-bill was filed, and the record of it is produced here in evidence.

That it was a litigation between Charles I. Wooster and Isaac Cooper, the same parties who are opponents in the hearing on the amended cross-bill and answer now before this court, and that it presented the question of their respective claims to the Benjamin D. Cooper farm, is not disputed.   The complainant in this cause (Cooper) insists that the very same matter now and here in dispute was heard and determined in that ejectment suit. On the other hand, the defendant Wooster contends that the claim of title to the farm which he now makes was not submitted or passed upon in the ejectment suit.

It is not denied that the defendant Wooster claimed in the ejectment suit as he does in this cause, under the will of Tacy operating as an execution of the power given her in Benjamin's will, but he insists that in this cause he claims that Tacy's will was an execution by her of that power *inter vivos*, and that in the ejectment suit he set up Tacy's will as an execution of the power operating as a will only.

Was the will of Tacy before the supreme court for it to decide whether it operated as an execution of the power *inter vivos?* If that court had determined that the will of Tacy, operating as an *inter vivos* execution of the power, had passed the farm to Mr. Wooster, would that judgment have been based upon a matter *dehors* the record?   If that fact was so within the record that a judgment for Mr. Wooster would be related to it to support the judgment, it must be held to have been so within the same record as to be *res adjudicata*, when judgment was given against him.

Wooster *v.* Cooper.

The special finding recited Benjamin's will, which gave the power to Tacy, and in setting up her will did not in terms specify that it operated in any special mode as an execution of the power. But the finding did state Tacy's will as an instrument in writing (setting it forth in full), which, on the day of its date, Tacy "executed and delivered" to Mr. Wooster. The special finding is drawn with apt words to present the facts upon which the several parties based their claims. The language used, "*executed and delivered,*" is appropriate to the allegation of the exercise of a power of appointment *inter vivos,* and is quite variant from that which would recite the exercise of a power by last will, which would have alleged the instrument to have been "published and declared." Under this finding the court had presented to it, and must have considered, whether an execution and delivery on June 19th, 1893, by Tacy to Wooster, of such a paper writing, was such an *inter vivos* execution of the power given her by Benjamin's will as would pass the fee of the farm to Wooster. Had judgment been for him it would have been sustained on the ground that the facts declared that Tacy had executed and delivered to Wooster an efficient execution of the power. The rendering of a judgment against Wooster was necessarily a determination that such an execution and delivery of a will did not pass the fee *inter vivos.* The judgment in the ejectment suit was therefore an adjudication between the same parties touching their title to the same subject-matter, by the same instrument, operating in the same manner, as is now presented in this cause.

The very matter of the efficiency of the delivery of Tacy's will, as an *inter vivos* execution of the power, having thus been adjudicated in a law court, which is essentially the proper forum in which to determine the title to lands, the defeated party cannot, against his adversary, be permitted to raise the same question in this cause.

The judgment thus pronounced was, on writ of error, taken before the court of errors and was there affirmed (*Wooster* v. *Fitzgerald, supra*), and a motion made for a rehearing was not

granted.   It is thus plainly shown that the defendant's conten-tion'has had full consideration.

The defendant Wooster insists that the opinions which the learned judges delivered in the previous suits indicate that they did not consider his claims that Tacy's will operated as an exe-cution of the power *inter vivos.*   The learned judges delivered their opinions upon such points in the cause as they deemed worthy of their notice, but their omission to discuss other mat-ters (within the issues presented and determined by the judg-ment) on which the defendant desired a deliverance cannot be thus cited to prevent the effect of the record.   What has been adjudged is to be settled by the issues presented and determined by the judgment.   The opinions of the learned judges express the reasons for the judgment, but form no part thereof.

The foregoing review of the proceedings in the several con-troversies between the parties shows that the determination of the issues expressly presented and decided by the effect of the previous judgments had adjudged that the defendant Wooster had no title to the farm under Tacy Cooper's will, operating either as a devise, as a will executing the power, or as an appointment *inter vivos.*

But if in fact the latter construction was not in express terms argued and discussed in the opinions accompanying the previous judgments, that claim was clearly included within the issues joined in this case before the decree of October, 1895, as to the personalty, and in the ejectment suit in the supreme court as to the real estate.   The cause now under consideration presents the same demand, between the same parties, touching the same matter, under the same piece of evidence, which was submitted on those previous issues.   There is no difference as to the claim or demand made.   That claim was and is that Wooster took title to the farm by the operation of Tacy's will.   The only pos-sible difference is as to the mode by which that will operated, whether as a devise or as an appointment by will or *inter vivos.* If each of those was not in fact argued and discussed, in the opinion of the learned judges, by whom the causes were heard,

each of them was included in the issue joined, and determined by the judgment. While it is true that mere opportunity to present a claim does not make the judgment in a cause *res adjudicata*, as to a matter not presented, it is equally true that the actual joinder in issue on the point and judgment thereon are conclusive, whether one mode of operation of a piece of evidence or another is argued or discussed. Otherwise what has been adjudicated cannot be ascertained from the record, but must be gleaned *aliunde* by parol proof of the points argued or discussed in the opinions, and perhaps (as is insisted upon in this case) in contradiction of the facts shown by the record.

The principle appears to be well established that where the former judgment and the issues being tried in the later cause *are upon the same demand*, the former judgment, if rendered upon the merits, constitutes an absolute bar to the second action, not only as to every matter which was offered and received to sustain or defeat the claim, but as to any other admissible matter which might have been offered for that purpose. *Cromwell* v. *County of Sac, 94 U. S. 352.*

If each new construction of each step in a title, which may in the course of litigation be insisted upon, constitutes a new cause of action, not quieted by the previous judgment, because not fully discussed in the opinion of the court, then there must be as many demands as there may be possible constructions of each muniment of title, and no conclusive judgment can be pronounced until the last possible argument had been discussed and overruled in the opinion of the judge who directs judgment.

If, however, it be assumed that the rule, *res adjudicata*, ought not to estop the presentation here of the defendants' claim that Tacy's will exercised the power *inter vivos*, does the proof submitted show that there was, in fact, such an exercise of the power?

In the will of Tacy appears this clause, which is claimed to have been an *inter vivos* execution of the power:

"I give, bequeath and devise all my property, both real and personal, wherever situate, and whatever the same may be, to my nephew, Charles I. Wooster, * * * to him and his heirs forever."

Wooster *v.* Cooper.

The will itself makes no reference to any exercise of the power, nor to Benjamin's will or property, nor to any estate whatever other than to Tacy's own property.

It was accepted at the hearing that it has been finally established by the court of appeals in the above-cited judgments that under the true construction of the will of Benjamin D. Cooper, the power of disposition given to his wife, Tacy, was limited to be exercised by her *inter vivos.* No mode in which the power should be executed was prescribed by Benjamin's will, and it is conceded that it could have been executed by a simple writing given *inter vivos,* expressing the intent of the donee.  *Cueman* v. *Broadnax, 8 Vr. 512; 4 Kent. Com. *330.*

At the hearing the defendant Wooster was permitted to introduce all the testimony he offered for the purpose of proving that Tacy Cooper did in fact execute the power by an act done by her *inter vivos.* The only claim made of such an execution of power was that Tacy exercised it by the making and delivery of her will to Mr. Wooster, who was therein named as sole executor.

It seems to be entirely settled that a general devise by the donee of a power, in which the testator refers to the property devised as his property, will not be held to have been an exercise of the power.  *Molton* v. *Hutchinson, 1 Atk. 558; Andrews* v. *Emmot, 2 Br. Ch. C. 303; Lowes* v. *Hackward, 18 Ves. 171.* No express recital of the power is however required, if the devise or other act done in execution of the power, shows that the donee, in acting, had in view the subject of the power and intended to act with relation thereto.  *Munson* v. *Berdan, 8 Stew. Eq. 378.* This intention may be collected from attending circumstances, as that the will includes something the testator had not, otherwise than under the power, or that a part of the will would be wholly inoperative unless applied to the power. *Standen* v. *Standen, 2 Ves. 590; Bennett* v. *Aburrow, 8 Ves. 616; Lewis* v. *Lewellyn, 1 Turn. & R. 60; Napier* v. *Napier, 1 Sim. 28; Bradish* v. *Gibbs, 3 Johns. Ch. 551; Meeker* v. *Breintnall, 11 Stew. Eq. 356.*

It is proven that Tacy was not, in her own right, the owner

of any real estate, and it is contended that, under the principle above declared, there is no property upon which her will can operate save in execution of the power, and that it must be held to be an exercise of the power.

It is not so clear, as the learned counsel for the defendant contends, that a general devise of lands by the donee of a power, who owns no lands at the date of the will, must, in New Jersey, be held to have been made in view of the power and with an intention to execute it. The theory upon which the above-recited cases go, is, that the testatrix must have contemplated the execution of the power, because when she made her will devising real estate she had no land of her own, and that within the power was the only land which she had at her disposal, and therefore she intended by the devise to execute the power.

This theory had support as indicative of the testator's intent at the time of making his will, so long as the state of the law was such that a devise passed only those lands (whereof the testator died seized) which he owned at the time of the making of his will. *Smith* v. *Curtis, 5 Dutcher 352.* This condition of the law was, however, changed by the statute of 1851 (*Gen. Stat. p. 3761 § 24*), which declared that lands whereof the testator died seized, though acquired after the making of a will, should pass by a general devise unless a contrary intention was expressed. This statute destroys the hypothesis upon which the above-stated theory depends, for since a general devise will now pass not only the lands left by the testator, which he owned at the date of his will, but also those which he acquired after that date, it is no longer true that the will of a donee of a power having, at the time of making his will, no lands other than those disposable within the power, would be inoperative unless applied to the power. The will may now operate at the time of the testator's death upon lands not within the power, which he acquired after the making of the will. The testator by his general devise may have intended to devise such after acquired lands, and as this possibility satisfies all the provisions of the will, without applying it to the power, it can no longer be maintained that a testator, who is the donee of a power, must, *ex necessitate,* be

held to have intended to execute the power when making a general devise of land.

It is, however, entirely settled that there must be strict compliance with the conditions which the donor of the power annexes to its exercise. *4 Kent Com. *330.* Benjamin D. Cooper, the donor, whose will created the power which it is claimed Tacy Cooper executed, prescribed that the power should be exercised by Tacy during her life, and he had declared that all of his property which should remain at her death undisposed of should go according to certain other gifts set forth in his will.

The substantial question to be determined in considering this case on its merits, is whether an instrument which declares on its face that it is a will, disposing of the testatrix's property, which was by the testatrix published as her will, in the form and with all the formalities of a will, and with a manifest purpose to make a will, which has not on its face, or in the attending circumstances, a single characteristic of an *inter vivos* appointment, and which may have full operation as a will of the testatrix's own estate, can by construction alone be held to have been an *inter vivos* appointment.

The donor required that if Tacy disposed of his property it should be by an *inter vivos* appointment. When the exercise of such a power is set up to establish the interest of one party and to defeat that of another, it is clear that the party asserting its exercise must, in whatever form the execution is expressed, show that the donee intended to execute the power according to the conditions of the donor's gift. If Benjamin required her to execute it *inter vivos*, and she, by a writing, intended and believed she was executing it by her will to operate after her death, the donee never had any purpose to execute the power within the period which the testator had prescribed. There is a wide variance between the exercise of a power by an appointment *inter vivos*, and by an appointment by will. If Tacy appointed at the time she executed her will, by the mere act of making it, then the fee irretrievably passed to Wooster at the moment Tacy executed her will, but if she, in making her will in Wooster's favor, attempted to exercise the power by will, she

15

must have intended that nothing should pass to him until her death, and meanwhile she retained the entire control of the situation, for she might, at any time during her life, revoke her appointment by will and appoint to someone else. The difference between the two modes of exercising the power is so radical that if the acts which Tacy did, show that she intended to exercise the power by her will, operating as a will after her death, it is difficult to see how such an execution can, by construction, be held to have been the making of an appointment *inter vivos*, for this would ascribe to her the doing of an act not within her intention. The fact that Tacy had no power to appoint by her will is no reason for holding such an appointment to have been an *inter vivos* execution. Her act, intended by her to operate after her death, cannot be converted by a court into an act operating immediately, for this would be an execution of the power, not by Tacy but by the court. She might have been willing to exercise the power by will operating after her death, but who but herself can say whether she would have been willing to make an appointment operating instantly at the time she executed her will? The circumstances of this case show rather a non-execution of the power by Tacy, in accordance with the terms of the gift, than an intended and defective execution of it.

There is a class of cases in which, when an attempted execution of a power is shown, which is defective, equity will supply the defect in favor of parties for whom the donee is under some legal or moral obligation to provide an execution of the power, such as purchasers for a valuable consideration, creditors, or the wife or child of the donee, when such aid will not, under all the circumstances of the case, be inequitable to other persons. The whole subject is expounded and the decisions are collated in *1 White & T. Lead. Cas. \*227*, in the notes to the case of *Tollet v. Tollet, 2 P. Wms. 489*.

If the making of Tacy's will should be deemed an attempted but defective execution of the power, and the aid of this court be invoked in favor of Mr. Wooster, to remedy the defect, it is at once answered that he is not within any of the classes of persons for whose benefit this court may be moved. There is no

pretence that any valuable consideration passed from him to Tacy as an inducement to the exercise of the power. He makes no claim to be a creditor. He is her nephew, but in *Strode* v. *Russell, 2 Vern. 621, 625,* and in *Marston* v. *Gowan, 3 Bro. Ch. Rep. 170,* it was admitted that the aid of this court would not be extended in favor of nephews to aid a defect involving the same principle. See, also, *Chapman* v. *Gibson, 3 Bro. Ch. Rep. *231.* Mr. Wooster stands to the donee and to the exercise of the power as a mere volunteer. There was neither legal nor moral obligation upon the donee to exercise the power in his favor.

That Tacy was required to execute the power during her life has, as stated, already been adjudged to have been shown by the donor's gift over of what might remain undisposed of at her death. If she attempted to exercise the power by her will, the execution could only come into operation after the expiration of the period during which the donor had required that she should execute it, and after his own gift over had, by reason of Tacy's default, vested in the succeeding beneficiaries. To aid such a supposed defective execution in equity, would be to defeat the donor's gift over. Equity will not extend its aid to make efficient an exercise of a power which came into operation after the period within which the donor had prescribed it should be executed. *Cooper* v. *Martin, L. R. 3 Ch. App. 47.*

No equity is shown which should induce this court to interfere in favor of Mr. Wooster and against the succeeding beneficiaries under Benjamin D. Cooper's will.

Under the views expressed, it was Benjamin's will and not Tacy's which disposed of his estate remaining at her death. The proofs show that the defendants Charles I. Wooster and William T. Cooper, executors of Benjamin D. Cooper, filed an inventory and appraisement of his estate, amounting to $7,291.70, including as part thereof the stock, crops and farming utensils. The debts, and some but not all of the money legacies, have been paid. Under Benjamin's will, Tacy Cooper was entitled during her life to keep, use, sell or dispose of his whole estate, but of such of it as should remain at her death, he directed his execu-

tors to dispose by giving several specific legacies which have been delivered, and the residue they were to sell. The net proceeds arising from the sale of the farm, and the crops, stock and farming utensils, the executors were directed to pay in equal proportions to the testator's niece and four nephews, William Cooper, Isaac Cooper, Anna J. Cooper, William T. Cooper and Warner Cooper.

It is in this fund to arise from the sale of the farm, tne crops, stock and utensils, that the complainant in the cross-bill and those sharing these proceeds with him, are interested, and it is as to these proceeds that he and they are entitled to relief. The ascertainment of this interest in the personalty will require an accounting by the executors for Benjamin D. Cooper's estate as it came to their hands, showing whereof it consisted, what portion was used to pay his debts and expenses of settlement of his estate, what portion of the crops, the stock or farming utensils (if any) was so used, what portion was disposed of by Tacy in her lifetime, and what remained at her death. In this residue the complainant, Isaac Cooper, and William Cooper, Anna J. Cooper, William T. Cooper and Warner Cooper or their representatives are, under Benjamin's will, entitled to share equally.

The same persons are the beneficiaries of the proceeds of the sale of the farm. It appears that by reason of the location of the farm, near to a suburban neighborhood, and its increasing value, it will be more profitable to the beneficiaries that the executors' power to dispose of it for their benefit, shall be exercised by a conveyance to them as tenants in common in fee, according to their several interests in the proceeds, than by a sale and the division of the purchase-money. The power given is to sell and dispose of the farm for the best price that can be gotten therefor; the proceeds, after costs and charges, to be paid to the beneficiaries named in equal shares.

The fee in the farm has descended to and is held by the heirs-at-law. It can only be divested and applied to the uses directed by the testator, by the exercise of the power of sale given to the executors by the testator's will. The executors in assuming the burden of the execution of that will, undertook, as part of their

duty, the execution of this power. It is in the nature of a trust, for the benefit of the persons named by the donor, which this court will control and compel the executors to perform. *Osgood* v. *Franklin, 2 Johns. Ch. 20.* The purpose of the donor to give the proceeds of the farm to the beneficiaries named, cannot be effected in any other way. A bill against the heirs to enforce such a power was sustained in equity, after the death of all the donees of the power. *Garfoot* v. *Garfoot, 1 Ch. Cas. 35 ; S. C., Freem. \*176 ;* see, also, *Locton* v. *Locton, Ib. \*136.*

The beneficiaries all appear, and for the reasons stated, join with the complainant, Isaac Cooper, in electing to take the farm by conveyance as land, rather than the proceeds of sale by division among them. There has been as yet no conversion under the power of sale. They all take the same shares, the same interest, by the same mode. No discretion is by the power given to the trustee, nor does the exercise of an election by the beneficiaries to take the farm as land, appear to conflict with any purpose of the donor in making his gift to them. In such cases equity will permit the beneficiaries to take the land, and will direct a conveyance to be made to them by the donees of the power, according to their respective shares. *Craig* v. *Leslie, 3 Wheat. 578 ; Morse* v. *Hackensack Savings Bank, 2 Dick. Ch. Rep. 285.*

The complainant in the amended cross-bill is entitled to relief to the extent above indicated, and a decree will be advised accordingly.