The single inquiry herein presented is whether by the provisions of her will testatrix intended to exercise the power of appointment which she enjoyed under the will of her father.
Nowhere in her will does testatrix make specific reference to the power. Standing alone, the instrument would be declared inoperative upon the trust estate. Farnum v. Pennsylvania Co.,87 N.J. Eq. 108; affirmed, Ibid. 652. But when the provisions of the will are viewed in the light of extrinsic circumstances disclosed by the evidence, it seems impossible to doubt that it was the obvious intent of testatrix to exercise the power given to her under her father's will. Viewed in the light of these circumstances the major provisions of the will are practically futile and without any sane purpose or rational intent with any other meaning attributed to them. The situation presented is that of a testatrix with power to dispose of the trust fund by her will, and with practically no property of her own to dispose of. In that situation she made a great number of money bequests ranging from $300 to $3,000 in amounts, and aggregating, approximately, the amount of the trust fund. Since there was practically nothing for these several bequests to operate on except the trust fund, and under the trust testatrix was clothed with power to make these bequests, it seems unmistakably manifest that in making the bequests *Page 500 
she was exercising that power. The circumstance that in her will she made no specific reference to the power should not be regarded as sufficient to negative that intent, if, by necessary implication, the intent is otherwise clearly manifest. Cueman
v. Broadnax, 37 N.J. Law 508, 513; Munson v. Berdan, 35 N.J. Eq. 376; Wooster v. Cooper, 59 N.J. Eq. 204, 223; Meeker v.Breintnall, 38 N.J. Eq. 345, 356; Lippincott v. Haviland,93 N.J. Eq. 585, 587. Nor is that intent less clear by reason of the circumstance that many years later assets came to testatrix through causes that no one reasonably could have anticipated at the time the will and its codicil were made. The testimony to the effect that at the time the will and its codicil were made testatrix owned practically nothing on which these bequests could operate, except the trust estate, is not as searching as might well be desired, but it adequately discloses that obvious situation.
The only circumstance which may be said to militate against the conclusion that it was the plain intent of testatrix to exercise her power of appointment, is the fact that in the residuary clause of the will testatrix used the expression "my estate." In the special circumstances of this case that, to my mind cannot be said to overcome the views already expressed. The evidence discloses that only two days before the date of her will testatrix wrote to her trustee, saying: "Will you kindly tell me about the amount of my estate in your hands as trustee so that I can make disposal of it more intelligently in my will." It is clear that this letter and the testimony disclosing the custom of testatrix to refer to the trust fund as her estate cannot be received as evidence in aid of construction, except, at most, for carefully limited purposes and in special circumstances; but I am convinced that in the special circumstances of this case that letter and testimony cannot be wholly ignored. It will be noted that the general situation presented is one in which, through competent extrinsic evidence disclosing the property owned by testatrix and her power of appointment, it has been found that two estates existed from one or both of *Page 501 
which the bequests may have been intended to be paid — one the estate of testatrix, which was almost infinitesimal as compared with the amount of the legacies ordered paid — the other the ample trust estate of the father of testatrix, the income of which had long been paid to testatrix, and of which testatrix had the power of disposition by her will. By these parol proofs of surrounding circumstances a latent ambiguity was created as to whether the combined property, or only the meagre property of testatrix, was by her intended to discharge these legacies. This, to my mind, brings the case within the spirit of the general rule that declarations of a testator may be resorted to in case of a latent ambiguity which arises by reason of two or more persons or things, each answering exactly to the person or thing described in the will. Griscom v. Evans, 40 N.J. Law 402. And in VanNostrand v. Board of Reformed Church, 59 N.J. Eq. 19, where the legatee was inaccurately named, Vice-Chancellor Reed (at p.21 of the reported case) went further, and said: "This evidence was competent, although there was no latent ambiguity, for, says Mr. Hawkins, `it is to be observed that evidence in the shape of sayings, c., of the testator may be in certain cases adduced to show that he habitually used certain words, even where the description is not equivocal, provided the sense thus sought to be put into them does not contravene their ordinary and legitimate meaning, this being distinct from evidence adduced to show in what sense he used the words on the particular occasion of writing the will.'" Hawk. Wills 10; Duke of Leeds v.Amherst, 9 Jur. 359; In re Feltham Trusts, 1 K. J. 528. Nor should it be overlooked that, in view of the nature of the trust, the expression "my estate" must be given a highly technical meaning to overcome its appropriately popular meaning, and this in a will drawn by a testatrix who was untrained in the law. Indeed, it has been held that the word "estate" in a will is not to be understood as a word of art, but of interpretation, and its meaning may be affected by other clauses and disposition in the will. Zimmerman v. Anders, 6 Watts. S. (Pa.) 218. This parol testimony *Page 502 
touching testator's statements is not to be considered as showing what testatrix meant to say, since it must be assumed that she meant to say what she did say, but at most is to be considered simply to show what she meant by what she did say — that is, what the words used by her signified in her mind. German PioneerVerein v. Meyer, 70 N.J. Eq. 192, 195. It cannot be doubted that a bequest to John Jones can be sustained in favor of William Jones if it be adequately disclosed that testator has always known John as William, especially if John should be found to be the more natural object of testator's bounty. This in no way conflicts with the general rule recognized in this state to the effect that a general bequest by the donee of a power in which testator refers to the property bequeathed as his estate will be held not to be an exercise of the power (Farnum v.Pennsylvania Co., supra), if it be accepted as a fact that in the mind or understanding of testatrix the term "my estate" embraced the trust estate, and I am unable to escape the view that in the circumstances of this case the evidence to that effect should not be ignored.
A decree will be advised in accordance with these views.