George B. Wilson died a resident of Monmouth County January 17th, 1909. He left a will duly probated by the surrogate of that county. Complainant, Fidelity Union Trust Company, as substituted trustee under his will, prays construction and instructions with respect to the fourth paragraph thereof which reads:
"Fourth: All my residuary estate, both real and personal, wheresoever situate, I give, devise and bequeath to my executor, his heirs, successors, and assigns forever, to have and to hold the same in trust to be disposed of as follows:
"(a) One-fifth of the net income from the residuary estate shall be paid to my wife Mary F. Wilson, in quarter-yearly payments during her life. Such payments shall be made to her for her sole and separate use freed from any and all claims by any husband or any creditor. This bequest to my wife is made in lieu of all right of dower and thirds in my estate and her acceptance of this bequest shall debar her from any and all other claims of any description against my estate.
"(b) The remaining four-fifths of the net income from the residuary estate shall be paid during their lives to my three sisters, Jennie B. Wilson, Agnes M. Wilson and Annie B. Wilson, of Wheeling, West Virginia, and to the survivors and survivor of them, in equal portions by quarterly-yearly payments, to wit: one-third of the said four-fifths to each of them as long as three of them survive; one-half of the said four-fifths to each of them as long as two of them survive, and the entire four-fifths to the last survivor of them. If my wife does not survive me, or if she survives me and dies before any of my said sisters, then the entire net income from the residuary estate shall be paid to my said sisters and the survivors and survivor of them in equal portions as heretofore directed in this clause.
"(c) Upon and after the death of all of my said sisters, or, if they all die before me, then upon and after my death one-fifth of the net income from the residuary estate shall be paid to my nephew, Wilson Hoge, during his life, in quarter-yearly payments: one-fifth of the net income from the residuary estate shall be paid to my cousin, George Baird, during his life, in quarter-yearly payments: one-tenth of the net income from the residuary estate shall be paid to my *Page 364 
cousin Catherine Caldwell Farrar during her life, in quarter-yearly payments, and the remainder of the net income from the residuary estate (except the one-fifth thereof payable to my wife during her life) shall be paid to my cousin, Alfred Caldwell, in quarter-yearly payments, until the termination of the trust. If the said Wilson Hoge, or the said George Baird, or the said Catherine Caldwell Farrar, or any of them, shall not survive all of my said three sisters, or, if they, or any of them, shall die after becoming entitled to a share of the net income herein provided for, then the share or shares of net income which would have been payable to them, or any of them, shall be paid to the said Alfred Caldwell, in quarter-yearly payments until the termination of the trust.
"(d) If my wife survive me and all my said sisters, then upon and after her death the one-fifth of the net income from the residuary estate which would have been payable to her shall be paid to the said Alfred Caldwell, in quarter-yearly payments, until the termination of the trust.
"(e) If neither my wife, nor any of my said sisters survives me, then, upon and after my death the one-fifth of the net income from the residuary estate which would have been payable to my wife shall be paid to the said Alfred Caldwell, in quarter-yearly payments, until the termination of the trust.
"(f) Upon and after the death of the last survivor of my wife, my said three sisters, the said Wilson Hoge, the said George Baird, and the said Catherine Caldwell Farrar, or, if they all die before me, then upon and after my death the principal of the entire residuary estate together with any accumulations of net income thereon shall be paid over, transferred and conveyed absolutely to the said Alfred Caldwell, if living, otherwise to such persons as he may by will appoint, or, in default of such appointment, to his next of kin in equal shares per stirpes and not per capita and the trust shall thereby be terminated.
"(g) If the said Alfred Caldwell shall die before me, or if he shall die before the termination of the trust, the payments of net income which are herein required to be paid to him shall, until the termination of the trust, be paid to such persons as he may by Will appoint, or, in default of such appointment, to his next of kin in equal shares, per stirpes and not per capita."
Upon the death of all three sisters of decedent the income of the trust under subdivision "c" of paragraph four thereof is to be distributed among a nephew and three cousins, one of which cousins is Alfred Caldwell. Under subdivision "f" of paragraph four it is provided that upon and after the death of the last survivor of the testator's wife, his three sisters, Wilson Hoge, George Baird and Catherine Caldwell Farrar, the entire residue of the estate, together with any accumulations of net income thereon "shall be paid over * * * to *Page 365 
the said Alfred Caldwell, if living, otherwise to such persons as he may by will appoint, or, in default of such appointment, to his next of kin * * *."
His widow, Mary F. Wilson, died March 9th, 1915. The last of his sisters, Annie B. Wilson, died July 25th, 1943. The nephew and all the cousins, including Alfred Caldwell died, thus making effective subdivision "f" of the fourth paragraph of the will. He died March 11th, 1925, a resident of Wheeling. West Virginia, leaving a signed paper-writing which bore his own handwriting dated August 27th, 1921, purporting to be his last will and testament. In proceedings in the Probate Court of West Virginia this was held to be a valid will and admitted to probate. It was not signed, acknowledged, published or declared in the presence of attesting witnesses as required by the laws of this state and could not here have been admitted to probate as his will.
Complainant is in doubt as to whether in his will Alfred Caldwell validly exercised the power of appointment granted to him under the will of George B. Wilson, deceased, and whether the exercise by the power of appointment by him as donee must be determined by the laws of this state, the domicile of the donor of the power, or the laws of West Virginia, the domicile of the donee of the power.
In item second of his will Alfred Caldwell gave to his wife, Laura E. Caldwell, as her absolute property, the full one-third of the rest and residue of his personal estate and property, including as a part of such personal estate all of his right, title and interest in the personal estate of his cousin, George B. Wilson, under the provisions of his will, of every kind, and a dower in his real estate other than his residence property, including as a part of his real estate any real estate to which he has any right, title or interest by virtue of the will of George B. Wilson, deceased. The dower interest referred to in this item is not involved here since Laura E. Caldwell, his wife, died November 6th, 1927, and prior to the death of Annie B. Wilson, the last life tenant under Wilson's will.
In the fifth item of his will, Alfred Caldwell gave the residue of his estate, including as part thereof the real and personal estate belonging to him under the will of George B. *Page 366 
Wilson, of which he had the right to dispose of by will one-sixth thereof to each of five of his children and the remaining one-sixth to his son, William G. Caldwell, in trust for the benefit of his daughter, Laura B. Mead, for life and at her death said share to be paid over and transferred to the then living children of Laura B. Mead and the descendants of any of her children who may then be dead having left descendants, such descendants to take per stirpes. William G. Caldwell qualified as trustee of the trust thus created for the benefit of Laura B. Mead and the others mentioned and is still acting as such.
The children of Alfred Caldwell surviving him are William G. Caldwell, Jane C. Schroll, Helen C. Glass, Martha B. Caldwell, Mary C. Davidson and Laura B. Mead. Laura B. Mead has four children living, namely, Armistead D. Mead, Charles P. Mead, Laura Mead Morris and Alfred C. Mead.
The widow of Alfred Caldwell by item IV of her last will gave all of the property which Alfred C. Caldwell by item second of his will appointed to her to five of her six children, by name, a one-fifth share being given outright to four of said five children and the remaining fifth share be given in trust to pay the income therefrom to the fifth of said children, Laura B. Mead, for life, and on her death to pay the principal to her children and descendants, if any, otherwise to certain contingent remaindermen. She appointed Martha B. Caldwell and Helen C. Glass executors of her estate. The latter having renounced, Martha B. Caldwell qualified as executrix.
It should be here stated that the power of appointment in the instant case involves personal property only.
It remains to be determined here whether the power of appointment granted to Alfred Caldwell by the will of George B. Wilson has been effectively exercised. If so, the residuary estate now in the possession of the complainant will be distributed five-sixths thereof to five of the children of Alfred Caldwell, deceased, and one-sixth thereof to William G. Caldwell, in trust for Laura B. Mead, who will receive the income thereof for life, with the remainder over to the latter's four children, Laura Mead Morris, Armistead D. Mead, Charles P. Mead and Alfred C. Mead. If the power of appointment *Page 367 
has not been effectively exercised, the entire residuary estate vests in the six children of Alfred Caldwell; and, the trust in favor of Laura B. Mead, in so far as Alfred Caldwell's interest in the George B. Wilson's estate is concerned, will fail.
Caldwell, the donee, did make a will valid in the state of his residence and probated therein. Whether the power conferred upon him by the will of the donor was exercised is controlled by the law of the domicile of the donor, both as to the execution of the power and the interpretation of it. Rosenbaum v. Garrett,57 N.J. Eq. 186, 41 Atl. Rep. 252; Farnum v. Pennsylvania Co., c., 87 N.J. Eq. 108; 99 Atl. Rep. 145; affirmed, 87 N.J. Eq. 652;101 Atl. Rep. 1053; Fidelity Union Trust Co. v. Ackerman,121 N.J. Eq. 497; 191 Atl. Rep. 813. Property passing to an appointee under the provisions of a will executed by the donor of the power does not vest in the appointee through the donee of the power but comes directly to the appointee from the original donor of the power. The donee is but the indicator pointing out to whom the property goes. Leggett v. Doremus, 25 N.J. Eq. 122;McCook v. Mumby, 64 N.J. Eq. 394; 54 Atl. Rep. 406.
The exercise of the power of appointment must be made in the manner directed by the donor. Cameron v. Crowley, 72 N.J. Eq. 681; 65 Atl. Rep. 875. In the instant case the direction of the donor to the donee was that he dispose of the property by his will. That the donee intended to exercise the power by his will is entirely clear from the provisions therein contained. Although it is not necessary that the power should be referred to in the instrument to effect the execution of the power, where the intent is otherwise manifested, it being sufficient if the power exist and is intended to be executed (Den v. Crawford,8 N.J. Law 90, 103; Cueman v. Broadnax, 37 N.J. Law 508, 513; Wooster v.Cooper, 59 N.J. Eq. 204, 223; 45 Atl. Rep. 381; Ackerman v.Ackerman, 81 N.J. Eq. 437; 86 Atl. Rep. 542; Paul v. Paul,99 N.J. Eq. 498; 133 Atl. Rep. 868), nevertheless the donee in the instant case in exercising the power and disposing of the appointed property refers to the will of the donor, the property and the power conferred upon him therein. *Page 368 
Mr. Justice Story in Harrison v. Nixon, 34 U.S. 483, 504,
says:
"They [wills] are supposed to speak the sense of the testator, according to the received laws or usages of the country where he is domiciled, by a sort of tacit reference; unless there is something in the language which repels or controls such a conclusion. In regard to personalty in an especial manner, the law of the place of the testator's domicile governs in the distribution thereof, and will govern in the interpretation of wills thereof; unless it is manifest that the testator had the laws of some other country in his own view."
In 11 Am. Jur. 486 § 179, it is said:
"The general rule has been stated that the law of the domicil of the donor of a power of appointment given by will must govern as against the law of the domicil of the donee in determining whether or not the will of the latter has exercised an execution of the power with reference generally to personal property. * * *"
I must hold therefore that the power of disposition was not effectively exercised by the donee. Present decree in conformity with the foregoing conclusion. *Page 369