LEGGETT vs. DOREMUS and others.

1. A judgment recovered against a devisee for life, vested under the will with power to consent that the executors should sell the real estate at their discretion, and appropriate the income for the support of such devisee and his family, during the devisee's life, does not work an extinguishment of the power. The lien of the judgment is subject to the power.

2. The power to consent to a sale is not extinguished in all cases where the donee of the power is the life tenant, even by the absolute alienation by him of his life estate. The rule is, that so long as nothing is done in derogation of the alienee's estate, the alienation has no operation on the power.

3. When a power is executed, the person taking under it, takes under him who created the power, and not under him who executes it. The only exceptions are, when the person executing the power has granted a lease or any other interest which he may do by virtue of his estate, for then he is not allowed to defeat his own act. But suffering a judgment is not within the exception as an act done by the party; it is a proceeding *in invitum*, and therefore falls within the rule.

On motion to dissolve injunction.

*Mr. W. S. Whitehead*, for the motion.

*Mr. J. W. Taylor*, contra.

THE CHANCELLOR.

Goline Doremus, who died about April 1st, 1873, by his will gave and devised to his son Charles the use and occupancy of a certain lot of about half an acre of land in Bloomfield township, in the county of Essex, with the buildings and improvements thereon, during Charles' natural life, free and clear from all encumbrances, and after Charles' death, to the surviving children of Charles, in equal shares. The will also provides that the land may, nevertheless, be sold and conveyed in the lifetime of Charles, by his consent in writing, at the discretion of the executors, and that if the sale should

be so made, the net proceeds thereof shall be considered and disposed of as part of the residue of the testator's estate; which residue he, by the will, gave and devised to his executors in trust, to be held by them after the decease of his wife, and the net interest or income thereof to be paid or appropriated at their discretion, for the support of Charles and his family, during the lifetime of Charles; after his decease such residue is to be equally divided between the surviving children of Charles. The executors named in the will are, the testator's wife, his son Charles, Joseph K. Oakes, and Thomas C. Dodd, all of whom, except the widow, proved the will. The complainant, on the 25th of July, 1873, recovered a judgment in the Circuit Court of the county of Essex, against Charles and his son Michael, for the sum of $686.26, and on the 5th of August, of the same year, issued a *fieri facias de bonis et terris,* and caused it to be levied on the right, title, and interest of the defendants in the land above mentioned. The bill alleges that sufficient goods and chattels of the defendants not being found, the sheriff, in order to satisfy the judgment, has advertised for sale the right, title, and interest of the judgment debtors in the land, but that the complainant is apprehensive that Charles will, for the purpose of putting the property beyond the reach of the complainant, and to hinder and defeat him in the collection of his judgment debt, consent and procure, unless prevented by this court, a sale and conveyance of the property before it can be sold under the execution. It further states that, if such consent should be given, and the executors should sell and convey the premises, the complainant will be defeated in the recovery of his debt, and the proceeds of the premises will be placed under the control of Charles, and put beyond the reach of the complainant and the other creditors of Charles. The bill prays that Charles and Michael may be compelled to pay and satisfy the judgment and execution, or to refrain from hindering and defeating the satisfaction thereof, by procuring a sale by the executors, and that Charles may, to the end that the property may be sold under the execution, be restrained

from consenting to a sale by the executors. On the filing of the bill an injunction was granted, and motion is now made to dissolve it, on the ground that there is no equity in the bill.

The claim to relief is based on the ground that the power to consent to a sale by the executors, is a power appendant, and that the judgment against Charles, works an extinguishment of it. The bill, however, alleges that the executors can make a good title notwithstanding the judgment, and its object is, obviously, not to prevent a cloud upon the title to be acquired under the judgment and execution, but to prevent the executors from selling the property under the power given by the will, in order that the complainant may thus, by sale of the life estate, be enabled to collect the amount due on his judgment. Why should the court do this? The trust did not proceed from the debtor, nor is any fraud alleged. The bill does not seek to reach any equitable interest of the debtor, but merely invokes the restraining power of the court in aid of the levy made upon a legal estate, not with a view to removing a fraudulent encumbrance, or vacating a fraudulent conveyance, but to prevent the exercise of a power by the executors, a power with which they were invested by the testator for the purpose of protecting his bounty, and securing it to the objects for which it was bestowed, and to the persons whom alone he intended to benefit by it. The testator, in making this provision for sale, probably had in view the very contingency now presented—the effort of a creditor of Charles to subject the land to the payment of his debt. It is manifest that he intended to secure the property, or the proceeds of it, to the support of Charles and his family, beyond such contingency. If the complainant's judgment has indeed deprived Charles of the power to consent, there is no occasion for this suit. Said Lord Eldon, in *Thorpe* v. *Goodall*, 17 *Ves.* 388, where a bill was filed by the assignees of a bankrupt, who was seized for life, with a general power of appointment, with remainder in default of appointment to the heirs of his body, to compel him to execute the power of appoint-

ment for the benefit of his creditors, "If the estate of the bankrupt has passed under the assignment, so that the power is destroyed, then there is no occasion for this bill. If the transfer of the life estate has destroyed the power, according to the reasoning of Mr. Sugden in his book, (which is in many respects excellent,) that as it is a power, in a sense, coupled with an interest, that interest has so passed under the assignment that the power no longer exists, then the plaintiffs have nothing to do here." On the other hand, if the levy has not deprived Charles of the power to consent, (and that is the view presented by the bill,) on what ground can the aid of this court in the premises be successfully invoked? In *Wetmore* v. *Midmer*, 6 *C. E. Green* 242, a case somewhat similar to this, a judgment against a life tenant was held to be subordinate to an absolute power of sale vested in executors. In that case, the testator, by his will, gave to his son a life estate in his mansion-house and part of the grounds belonging to it. Subsequently in the will, he authorized his executors to sell and convey all or any part of his real estate. It was held by this court, that under that provision the executors had power to sell and convey in fee the mansion-house property devised to the son for life, and that their deed conveyed to, and vested in the grantee, the premises free of the life estate. *Bacot* v. *Wetmore*, 2 *C. E. Green* 250. The will was proved in 1852. In 1851 a judgment had been recovered and was still subsisting against the son, for a considerable sum, in the Supreme Court of this state. The executors sold the mansion-house premises in 1852, and in 1869, under an *alias* execution issued on the judgment above mentioned, a levy was made on that property. It was held that the subsequent power in the will to the executors to sell all or any of the lands devised, must prevail over the former devises, which must be taken as subject to this power and its execution, and that therefore it followed that the judgment and execution must be subordinate to the absolute power of sale vested in the executors. In the present case the devise is of the use and occupancy of the land to Charles for his life, free

from all encumbrances, with remainder to his surviving children in equal shares, with power to the executors to sell and convey the property in Charles' lifetime, notwithstanding that devise, at their discretion, but not without his written consent. In case of such sale, the proceeds are to fall into the residue of the estate, and with it to be held in trust by the executors after the decease of the testator's widow, and the net interest or income to be appropriated by them at their discretion, to the support of Charles and his family, and after his death the residue to be equally divided between his surviving children. Here, then, is a power of sale at the discretion of the executors, clogged only by the necessity of obtaining the written consent of Charles. The lien of the judgment and execution must be subject to this power and the exercise of it, at the discretion of the executors, unless the judgment works an extinguishment of the power. The complainant claims, that by virtue of the judgment, execution and levy, the power to consent is taken away; if not legally, then equitably; and therefore, the power of sale is annulled; that is, that the judgment, execution and levy are to be regarded as an absolute alienation by Charles, from which he ought not to be permitted to derogate. He insists that the bankruptcy of Charles would destroy his power to consent, and therefore, by parity of reasoning, the recovery of a judgment against him would do so. But, bankruptcy does not, in all cases, extinguish the power of the life tenant to consent to a sale. *Holdsworth* v. *Goose*, 29 *Beav.* 111; *Eisdell* v. *Hammersley*, 31 *Beav.* 255; *Simpson* v. *Bathurst, L. R.* 5 *Chan. App.* 193.

Nor is the power to consent to a sale extinguished in all cases where the donee of the power is the life tenant, even by the absolute alienation by him of his life estate. *Warburton* v. *Farn,* 16 *Sim.* 625;. *Alexander* v. *Mills, L. R.* 6 *Chan. App.* 124; see also, *Long* v. *Rankin,* 2 *Sugd. on Pow.* (3d *Am. ed.*) *Appx.* 513; *Walmesly* v. *Butterworth, Coote on Mortgages, App.* 573; *Tyrrell* v. *Marsh,* 3 *Bing.* 31; *Davies* v. *Bush, McCl. & Yo.* 57; *Jones* v. *Winwood,* 10 *Sim.* 150; *Ren.* v. *Bulkeley, Doug.* 292.

The rule is, that so long as nothing is done in derogation of the alienee's estate, the alienation has no operation on the power. The donee cannot defeat his own grant. On this principle rests the decision in *Piers* v. *Twite*, 1 *Dru. & Wal.* 279, which was a case where a person seized of a life estate in lands, and being indebted in various sums of money secured by his bonds, filed a bill to restrain proceedings at law on them, on account of usury, and then entered into a consent in the cause with his creditors, whereby it was agreed that a certain sum should be found due on a foot of those bonds, and the consent was embodied in the master's report and a decree pronounced declaring that that sum was due and well charged on the lands in the pleadings mentioned; and it was held that the consent was such an act or contract on the part of the debtor, as when acted on and embodied in the decree of the court, deprived him of the right of executing a power to charge the life estate with portions for younger children, so as to affect the rights of creditors under the decree which had attached upon his life estate.

But, is the complainant's judgment at law, in this case, to be regarded as an alienation of his life estate? Said Lord Tenterden in *Doe d. Wigan* v. *Jones*, 10 *B. & C.* 459, "It has been established ever since the time of Lord Coke, that when a power is executed, the person taking under it takes under him who created the power, and not under him who executes it. The only exceptions are where the person executing the power has granted a lease or any other interest which he may do by virtue of his estate, for then he is not allowed to defeat his own act. But suffering a judgment is not within the exception as an act done by the party, for it is considered as a proceeding *in invitum*, and therefore, falls within the rule." In that case, an estate had been conveyed to such uses as a person should by deed appoint, and in the meantime, to the use of himself for life, and afterwards a judgment was recovered against him, and after the entry of the judgment, he mortgaged the property, appointing the use for five hundred years, and after the execution of that deed,

the judgment creditor sued out an *elegit*. It was held that the lien upon the land was defeated by the execution of the power.

In *Doe d. Mitchinson* v. *Carter*, 8 *T. R.* 57, where a lessee covenanted not to alien or transfer away his lease, and afterwards acknowledged a judgment on which the lease was taken in execution and sold, it was held that this sale was not a forfeiture of the lease. In that case, the lessor brought an ejectment against the purchaser of the lease. Lord Kenyon said there was a difference between those acts which a party does voluntarily, and those which pass *in invitum;* that judgments in contemplation of law always pass *in invitum*, and that that was not an alienation within the meaning of the covenant.

There is no equitable ground in the bill on which this court can be asked to extend its support to the complainant's lien. On the other hand, it is rather its duty to give effect to the intention of the testator in the devise under consideration. The power of sale was not given for the benefit of Charles alone, but for the benefit of his family also. It is evident that in the gift of the use and occupancy of the property the testator had the same design and sought to effect the same object. It may be remarked that this court will sometimes control the extinguishment of such a power. In *Cunynghame* v. *Thurlow*, reported in a note in 1 *Russ. & Myl.* 431, where a father, having a fund for life with remainder to his children in such shares as he should appoint, and in default of appointment to the children equally, made a release of the power for the purpose of vesting in himself the share of a child who had died, and whose executor and legatee he was, the court refused to give present effect to the release so far as it operated to vest such share in him, although the power was, in fact, extinguished by the release. And as a general proposition, if the duty of the donee requires him to exercise a power at a future time, he cannot extinguish it by a release. *Williams on Real Prop.* 256.

This case differs essentially from one where the gift is of a life estate, with a power to the life tenant to compel a sale by

his direction or appointment. There, the life tenant moves the arm of the trustee at his will and for his own advantage. Here, the sale rests in the discretion of the trustees, qualified only by the necessity of obtaining the consent of the life tenant to the exercise of that discretion. The power of sale is in them, not in him. However much he may desire a sale, it cannot be had except at their discretion.

To grant the prayer of this bill would be to defeat the manifest intention of the testator, as well by depriving Charles and his family of all use and occupation of the property, during his lifetime, and so of all benefit of the devise, during his life, as by depriving the executors of the power conferred by the testator for the protection of the subject of his bounty, and to secure it to its appropriate objects; and it would be to deprive those in remainder, as well as Charles, of the benefit of the exercise of that power.

The judgment creditor has obtained a lien on such estate, and only on such estate, as well as to tenure as otherwise, as by the provisions of the will has been created. If the estate be uncertain, he has no equity to call on this court to add certainty to it. If its tenure be weak, he has no equity to call on this court to strengthen it.

If, as before remarked, the power to consent is extinguished by the judgment, then no relief is needed in the premises. If it be not so extinguished, there is no case made by the bill to induce this court to exercise its power, under the circumstances, to prevent a sale by the executors.

The injunction will be dissolved and the bill dismissed, with costs.