WILLIAM M. WRIGHT et al., executors,

*v.*

MINA W. KEASBEY et al.

[Decided February 17th, 1917.]

Under the language of the will in question, the executors therein named have no general power of sale of real estate, but as to those shares of the estate given to them as trustees to be "reduced to personalty" there is a necessarily implied power of sale of real estate.

---

On bill, &c.

*Mr. Cortlandt Parker,* for the complainants.

*Mr. Charles F. McKinney,* for the defendants.

STEVENS, V. C.

This is a bill for the construction of the will of Mrs. Dora Mason Wright. She left a considerable estate, real and personal, the realty consisting of many separate parcels. The question is whether the will contains, by implication, a power of sale.

By the first clause she provides for the payment of her debts: by the second she directs that all her estate, real, personal and mixed, be divided into six equal parts. Three of these parts she gives out and out, one to her son William Mason Wright, another to her son Edward H. Wright, Jr., and a third to her daughter Dora W. Parker. The clauses are similar and I quote the first: "I give, devise and bequeath to my son William Mason Wright, his heirs and assigns forever, a one-sixth share of my estate."

To her three daughters, Emily, Julia and Mina, she gives in a qualified way. I quote the clause giving a share to Emily:

"I give, devise and bequeath to my daughter Emily a one-sixth share of my estate, the principal thereof to be held in trust and the income to be paid to her during the term of her natural life. I direct that my said daughter Emily shall have the power to dispose of by will her one-sixth share outright, should she so desire. If she dies intestate and without leaving issue, then this trust is *to terminate* and her one-sixth share of the said estate is to be divided among her brothers and sisters surviving her, their heirs and assigns forever."

There are some variations in the provisions of the clauses giving a sixth to Mina and Julia, but they are similar as far as respects the present question.

The concluding paragraph reads as follows:

"I nominate and appoint William Mason Wright, Edward H. Wright, Jr., and Chauncey G. Parker executors and as trustee to perform and fulfill the foregoing trusts. I direct that at the request of any of the *cestui que trusts* the said trustees shall turn over to any good trust company as much of the share of such *cestui que trust* as shall be reduced to personalty and shall continue thereafter so to do, as such

share is so reduced to personalty and the proceeds and income only shall be divided to the shares, unless a general division of the real estate shall be made; and I direct that said trustees may hold sufficient personal property to care for the real estate in the way of taxes, improvements and other fixed charges; and I direct that the executors and trustees herein named shall each receive one thousand dollars as compensation for their services and no more."

Two questions arise. Have the executors power to sell the land generally? If not, have they a power to sell the interests of the three daughters, Emily, Julia and Mina?

I can find no power to sell the three shares given outright. The executors are not made trustees of those shares and the title to them, legal and equitable, is vested immediately and unconditionally in the two sons and in Mrs. Parker. Whether, when the testatrix, in the second paragraph of her will, directed that her estate should be divided into six equal parts, she, by implication, authorized her executors to make the division, I do not decide, but if she did, the power to make it does not include the power to sell (*Sugd. Vend.* (*8th Am. ed.*) § 70), and this is the only question I am now considering.

As to the concluding paragraph, I can find nothing in it that gives the power, as far as the three shares are concerned. Its scope and meaning will be considered later on.

The troublesome question is whether there is a power of sale annexed to the gifts to Emily, Julia and Mina. Looking merely at the words, the gift is direct to the daughters: "I give, devise and bequeath to my daughter Emily a one-sixth share of my estate," &c., but this is at once qualified by what follows: "The principal thereof to be held in trust and the income to be paid to her during the term of her natural life." As in the concluding paragraph, testatrix appoints her two sons and her son-in-law "trustees to perform and fulfill the foregoing trusts," and, as the foregoing trusts are those that relate to the daughters' shares, it follows that the persons designated to hold are those three gentlemen. But how are they to hold? As they cannot properly perform their duties (*e. g.*, the duty of collecting rents) unless they have a legal title, by construction, they take it. *Gilson* v. *Lord Montford, 1 Ves. Sr. 491; Zabriskie* v. *Morris and Essex Railroad Co., 33 N. J. Eq. 25; Lindley* v.

*O'Reilly,* 50 *N. J. Law* 646; *Doe* v. *Woodhouse,* 4 *T. R.* 89. As this title must be adequate to the performance of the duties imposed, it is more than an estate for the lives of the trustees. The trusts may survive those lives. They, or their successors, must pay the income to Emily during *her* life, and if she exercises her power of disposition, they must transfer to her devisees. In the case of Julia, they must pay out of the income "proper maintenance and support," and at her death divide the share among her brothers and sisters surviving her. In the case of Mina, they must pay the income during her life; at her death they must pay it to her daughter Dorothea until she reaches the age of thirty years, at which time "the share shall go to the said Dorothea, her heirs and assigns forever." Properly to perform these trusts I think the executors should take a fee.

The third paragraph strengthens this conclusion. The fee is needed if they wish to sell. The paragraph reads:

"I direct that at the request of any of the *cestui que trusts,* the said trustees shall turn over to any good trust company as much of the share of such *cestui que trust as shall be reduced to personalty,* and shall continue thereafter so to do as such share is so reduced to personalty."

In *Chandler* v. *Thompson,* 62 *N. J. Eq.* 723, the court of errors and appeals held that the right to exercise a power of sale by implication is rigidly restricted to those instances in which it is necessary to carry out the purposes of the testator's will. In *Lindley* v. *O'Reilly, supra,* a testator had directed his executor to purchase a suitable farm on which to erect buildings appropriate for a sisterhood and seminary and to apply the balance of money arising out of his estate for that purpose; and the same court held that, as it appeared from the will that it was testator's intention to devote his entire estate, real, personal and mixed, to the object mentioned, the executor took a fee by implication, or at least a power of sale. There, a power of sale sufficed. Here, as I have said, a fee appears to be necessary. If they have the legal fee, the executors may, of course, convey it. If they should, then, as Mr. Justice Depue said in the case last cited, the only question for this court to consider would be whether they have committed a breach of trust. In view of the

direction that as much of the share as shall be *reduced to personalty* shall, at the request of the *cestuis que trust,* be turned over to a good trust company, it would seem that they would not have done so. The language at once negatives the commission of a breach and indicates that it was testatrix's intention to vest them with a power to sell.

It is argued that the paragraph I am considering goes further and gives a power to sell the whole fee. Its language is not very clear, but I think it sufficiently appears that the right to sell is intended to accompany the trust and not to go beyond it. In the first place, testatrix appoints her two sons and her son-in-law "to perform and fulfill the foregoing trusts." The foregoing trusts are those that relate to the three daughters, unless the power to make a partition be included. Then comes the direction to turn over the *shares* reduced to personalty at the request of the *cestuis que trust.* Here, again, the will speaks only of shares of the *cestuis que trust.* The meaning of the words "and the proceeds and income only shall be divided to the shares (that is, as I understand it, to the shares just mentioned) unless a general division of the real estate shall be made," is somewhat obscure. The word "proceeds" would seem to mean something other than income—proceeds of what? Evidently, proceeds of that which has just before been mentioned—"so much of the share of the three daughters as may have been reduced to personalty." It is these proceeds which are to be divided to the shares "unless a general division of the real estate shall be made." But what does testatrix mean by a "general division?" She would seem to mean that when the division is made it is to be a general not a partial one.

Under the will, as I construe it, there is no difficulty in disposing of the estate by sale. The two sons and Mrs. Parker may sell their own shares, because they are absolute owners. The two sons and Mr. Parker may sell the other shares because they are trustees. Thus, proceeds may arise that may on the request of either of the three daughters be turned over to the trust company before a general division.

In this connection the language of the clauses giving life interests to the three daughters is significant. In each devise and

bequest it is said that the trust is to *terminate* on the daughters'
death intestate. This may occur before the real estate is sold.
Certainly, the right to sell, so intimately blended with the other
trusts, would not survive them. If it would not, we would have,
on the construction contended for by counsel, the singular
situation of a power existing as to the shares given out and out
and extinguished as to the shares that were held in trust.

Whether the testatrix contemplated the result here reached or
not, the scheme is not irrational and might well have been in-
tended. Two of the trustees were her sons. It was not irra-
tional to give them their shares out and out. The other was
her son-in-law, a prominent lawyer. It was not irrational to
give his wife's share out and out. They could sell or not as
they pleased. But that the estate might be properly adminis-
tered, it was, in the case of the daughters having only life estates,
desirable to give a right to convert the land into money, and
this right was put into the hands of the very persons who took,
or whose wife took, shares in fee-simple. The whole fee could
thus be completely disposed of without applying to the court.
The construction put upon the will accords with its language
and satisfies all practical requirements. There is no attempt,
by refinement, to avoid the operation of the rule so strongly em-
phasized by Mr. Justice Van Syckel.