The bill is by trustees for instructions.
Mrs. Dora M. Wright left a large fortune, six children and a testament. To each child she gave one-sixth of her estate; outright to three, William, Edward and Dora (Mrs. Parker); in trust to her executors for the other three, Minna (Mrs. Keasbey), Julia, an incompetent, and Emily. Emily's share was given in the terms quoted in Emily's will.
Emily gave the residue of her estate, less than $5,000, to her brother Edward H. Wright, and also gave to him her share of her mother's estate in these terms:
"Fifth. My mother, Dora Mason Wright, having by her last will and testament, bearing date the 27th day of March, 1913, and duly *Page 466 
probated before the surrogate of the county of Essex on the 16th day of October, 1918, provided as follows:
`Second. I direct that all my estate, real, personal and mixed, whatsoever and wheresoever situate, of which I am now possessed or which I may hereafter acquire, or of which I may die seized, shall be divided in six equal parts.
 * * * * * * * * `Third. I give, devise and bequeath to my daughter Emily a one-sixth share of my estate, the principal thereof to be held in trust and the income to be paid to her during the term of her natural life. I direct that my said daughter Emily shall have power to dispose of by will her one-sixth share outright should she so desire. If she dies intestate and without leaving issue, then this trust is to terminate and her one-sixth share of the said estate is to be divided among her brothers and sisters surviving her, their heirs and assigns forever.'
"I desire to dispose outright by my will of the said one-sixth share so as aforesaid referred to in the last will and testament of my said mother, and to that end I do now, by this my last will and testament, make disposition thereof, and I do order, appoint and direct that, after my death, the principal of said one-sixth share of my mother's estate directed to be held in trust and the income to be paid to me during the term of my naural life, be paid, transferred and conveyed to my brother, Edward Henry Wright, if then living * * *."
Julia's interest was held in trust for life, with remainder to her surviving brothers and sisters. Mrs. Keasbey's interest, also held in trust, passed to her daughter if she survived, and if she did not it was subject to Mrs. Keasbey's testamentary appointment, and if she died intestate, it went to her issue, and dying without issue it passed to her surviving brothers and sisters.
The mother's estate consisted of personal and real property and of the latter, 24 Park Place, Newark, was the most valuable piece. The United Cigar Stores Company sought it in 1920 at an advantageous rental for a long term of years. The company wanted a perfect title and refused to take a lease as the title then stood. This court had decreed that the executors had power of sale of the trust interests (Wright v. Keasbey, 87 N.J. Eq. 51), and although the executors and the devisees, with the exception of the daughter Julia, incompetent, and some infant contingent remaindermen, were ready to join in the lease, the company was unwilling. The executors then devised a scheme to convey the interests held in trust to a corporation to be formed, and submitted the *Page 467 
proposition to the court for its approval (Wright v. Keasbey,Docket 48 p. 392), but the company was not satisfied that the title would be valid, contending that the executors had power to sell for cash only and not for corporate stock. Thereupon the executors resorted to the expedient of having the three children who took outright under their mother's will make an offer to purchase the three trust interests for $100,000 and secure the purchase money by their bond and a mortgage upon the parcel. The bill was amended accordingly, setting up the offer; proofs were taken, the court ordered the sale, the executors conveyed to one of the purchasers in trust for the three and the three executed the lease to the company. Then, to restore the status quo ante, the bond was surrendered and the mortgage canceled, and in lieu the three purchasers executed a declaration of trust which, in respect of Emily's interests, is as follows:
"Until the termination of this trust, as hereinafter mentioned, to have, hold, possess and enjoy a one other one-sixth share in said land and real estate or the proceeds thereof in the event of sale in trust, to pay the net income thereof to Emily V. Wright during her life with power to the said Emily V. Wright to dispose of the said share by a last will and testament in writing. In case the said Emily V. Wright should die intestate, then the said share shall go equally to William M. Wright, Edward H. Wright, Julia D. Wright, Minna W. Keasbey and Dora M.W. Parker, their heirs and assigns forever."
Thus, Emily stood precisely as to her share of her mother's estate where she did before the manipulation of the title began.
The declaration of trust in favor of Emily, just quoted, was part of a trust agreement entered into by all the adult beneficiaries, except Julia, by the executors and the three purchasers — the new trustees. After reciting the offer to purchase, the proposed new trust and the anticipated lease, it contains this preamble:
"Whereas, the true intent and purpose of the said purchase and of this trust agreement is to substitute the obligations of this trust agreement with reference to the land herein mentioned, for the rights and interests which all persons have therein under the last will and testament of Dora M. Wright, deceased, and it is the desire of all parties *Page 468 
hereto to relieve and discharge the said parties of the second part, their successors and assigns from all further duties and liabilities with reference to the one-half interest in the same or in the proceeds thereof so far as the same has been held in trust under the said will."
By its terms the beneficiaries agreed to the surrender of the mortgage and to take in lieu the trusts therein declared. Notable distinctions between the provisions of the will and the trust agreement are that all six interests under the will are to be held in trust; the trusts are to remain intact until the death of the last survivor, and all, instead of survivors, take Julia's share and the shares of Minna and Emily. As to the latter three shares the declarations follow substantially the provisions of the will. The trust agreement was made April 18th, 1921. Emily's will bears date November 24th, 1922, and she died in December, 1927.
The question submitted for decision is whether Emily's share in 24 Park Place passed to her brother Edward under her will. The contestants insist that as the title to the property had been transferred to new trustees by her consent, her rights therein had been shifted from her mother's will to the trust agreement, and consequently her testamentary disposition of the mother's gift was ineffectual as an exercise of the power under the trust agreement. The point is wholly technical; it begs the question. As a prelude, let it be said that there is not a shadow of doubt in the court's mind, and it is believed none is entertained by the brothers and sisters disputing Edward's claim, that Emily intended Edward should have all her earthly possessions, however held or controlled, and that she died in the belief that she had complied with all legal formula to carry her intention into effect. With this conviction, the court feels it a duty to search diligently — even microscopically, if necessary — for an expression of that intention within the confines of her will, that her wishes be not frustrated. She was quite justified in the belief that her sixth share had been given to her to do with as she cared when she was through with it at the end of her life; that she could spend the interest and give away *Page 469 
the principal at her death. The spirit of the mother's will — a division of the estate into six equal parts and the gift of a share in the significant language of "give, devise and bequeath" to each child — naturally carried with it a sense of ownership in each for himself or herself. Whatever may be the legal definition of Emily's interest — a life estate with a power in gross to appoint by will — the donative intent expressed by the mother has a tinge of something more than a mere naked power of testamentary disposition. The words of gift would seem to import testamentary proprietorship; a legacy disposable by will as part of Emily's estate. Duryee v. Duryee, 95 N.J. Eq. 81. The precise legal effect of the bequest is not, however, the point; the question is, Emily's conception of it and her intention in respect of it as found in her will. Farnum v. Pennsylvania Co. forInsurance, c., 87 N.J. Eq. 108. The fact that Emily's will makes no reference to the power contained in the trust agreement is pointed to as significant that she did not intend to exercise it. Its very silence is impressive that she deemed her will to be all inclusive. The trust agreement was a mere makeshift; a scheme conceived and engineered by Mr. Chauncey G. Parker, a skilled lawyer and one of the executors, all in the utmost good faith and with the court's approval, to meet the views of the prospective lessees and to advance the interest of the estate. Whether Emily understood, beyond that her share of her mother's estate remained unimpaired, is doubtful, and the doubt is not casual, in view of the fact that shortly after the agreement she made her will of her share without reference to the agreement. No one treated the new trust as a thing apart from the estate; not even the executors. They collected the rents, mingled them with the other income and disposed of them among the beneficiaries and accounted for them to the court as a part of the estate up until the death of Emily. They were included in Emily's share of the income of her mother's estate and were paid to her as such by the executors. While the agreement purports to set up an independent trust, it was in fact and effect auxiliary to the main trust under the will of Mrs. Wright; *Page 470 
the legal title was shifted from one set of trustees to another for the convenience of the estate; the new trustees were but substitutional and held upon the same solemn trust imposed by the mother's will; and they redeclared that trust. That declaration was but a voicing of the parent trust of the will, extending it to the new possessors of the legal title; it would have followed the latter as a matter of law had they not made the declaration.
Now, it was in these circumstances that Emily made her will giving to Edward the "one-sixth share so as aforesaid referred to in the will of my mother." The gift was of "the principal of said one-sixth share of my mother's estate directed to be held in trust." The language is descriptive of all that made up the share, of all elements of which the share consisted antecedently at the mother's death. The bequest was of the share in the things Emily got from her mother, be they in the possession of the executors or by them and by her transferred to third parties and is inclusive of 24 Park Place held by the substituted trustees. The complainants are advised that they hold the property in trust for Edward H. Wright.