Complainants, executors under the will of Emily B. Pendleton, deceased, seek a construction thereof and a declaration of the rights of certain beneficiaries therein named, as well as a determination by the court as to whether, under the twelfth clause of said will, decedent "has exercised the testamentary power of appointment under the Emily Barton trust indenture of February 27th, 1882."
The Emily Barton trust aforesaid was created by Mrs. Pendleton, complainant's decedent, before her marriage to Mr. Pendleton. At the time of the creation of the trust, decedent was a resident of Philadelphia, Pennsylvania, where she continued to reside until her removal to Atlantic City, New Jersey, which was some 15 years before her decease. Her will was duly probated in Atlantic county after her decease.
Complainant, the Pennsylvania Company, is not only one of the executors under the Pendleton will, but also trustee under the trust indenture of 1882, and is a corporation of Pennsylvania, having its principal office and place of business in Philadelphia. The trust assets have at all times heretofore and still are in the possession of the trustee at its Philadelphia office. The present book value of the trust estate is $179,000. *Page 503 
At its inception, the trust estate consisted of personalty and still continues as such.
It is conceded that independently of the trust funds, the assets of Mrs. Pendleton's general estate are amply sufficient to satisfy all requirements of her will, including not only the payment of legacies, but also any outstanding indebtedness.
Testatrix died on February 24th, 1940, having executed her last will and testament on January 5th, 1933. She died without issue. Her next of kin are a first cousin, Lady Ava Willing Ribblesdale, a first cousin, Copley Amory II, and a first cousin once removed, Princess Frances Poniatowska.
By the twelfth clause of testatrix' will she provided:
"Twelfth. All the rest, residue and remainder of my estate, real, personal and mixed of whatsoever nature, and wheresoever situate, including all lapsed legacies, lapsed bequests, lapsed sums of every nature and kind arising from any and all personal property, sales of real estate, held in my residuary estate, principal to pay annuities in case of death and also including the principal of the trust funds over which I am given the power of appointment by the Will of Susan R. Barton, deceased, and in execution of any and all powers given to me and contained in the said Will of the said decedent, I give, devise and bequeath in equal shares or parts to the Jefferson Medical College of Philadelphia (1) for research work in the application of radium for the treatment of cancer and for the purchase of radium for such treatment, or for such other purposes in the treatment of said disease as the Board of Trustees of the said Hospital may hereafter determine to be advisable and shall be found and determined by them to be the best method of the treatment of the said disease, having in mind the probable development of research work in connection with its treatment, in memory of my husband, Edward Gray Pendleton, and (2) to the said Jefferson Medical College Hospital of Philadelphia, Department of Disease of the Chest, for the study of tuberculosis and the care of those who may be in the said Hospital for the treatment of the same, in memory of my Mother, Emily C. Barton. These gifts are conditioned upon the agreement by the said Hospital that no part of the fund, income or principal, shall be used for any purpose connected with vivisection, to which I am unalterably opposed."
It will be observed that under the will provisions aforesaid, the next of kin did not share in the residue of testatrix' estate, but that the Jefferson Medical College of Philadelphia is the beneficiary thereunder.
On February 27th, 1882, testatrix, then Emily Barton and then a resident of Philadelphia, Pennsylvania, transferred to *Page 504 
the Pennsylvania Company certain assets under a trust indenture of that date, in which instrument the trustee was directed, upon donor's decease, to
"* * * pay over, assign and convey the principal to such persons, for such estates, legal, equitable, life or otherwise, and with such powers, as she, the said Emily Barton by any last will or writing in the nature thereof, shall appoint, or, upon her decease in case she shall not exercise this power of appointment to divide the principal into as many parts or shares as there shall be children of hers then alive; and children of hers then deceased, represented by descendants then living, and to sub-divide the shares falling to each set of descendants of a child of hers then dead, among them `per stirpes' upon the principle of representation and to pay over to such child and descendants, who shall then be found entitled, its share in fee. In trust in case of the death of the said Emily Barton without her having exercised her power of appointment there shall be no descendants of hers then alive, to pay over, assign and convey the said principal to such persons as would then take the real and personal estate, as heirs and next of kin of the said Emily Barton had she then died actually seized and possessed thereof."
It will be noted that the beneficiaries under the trust indenture, in case of failure of the donor to exercise the power of appointment reserved in that instrument, are those persons heretofore named as the next of kin of the donor, and that the Jefferson Medical College is not such a beneficiary. Mrs. Pendleton was not survived by children or descendants of children.
The first question for decision is — does this court have jurisdiction to construe the Pendleton will for the purpose of determining whether or not testatrix executed the power of appointment reserved to her under the trust indenture of 1882, and if the court has such jurisdiction, should it be exercised at this time?
The Pennsylvania Company, as trustee, has filed its account of the 1882 trust funds in the Orphans Court of Philadelphia, in which proceeding, now pending, all parties who may have any interest in the trust funds are before that court, and wherein that court, as an incident to the accounting, will determine those to whom the trust funds will be distributed by the trustee, and wherein, as a preliminary to the question of distribution, that court will, of necessity, determine whether *Page 505 
Mrs. Pendleton exercised the power of appointment reserved to her. Whether or not the Philadelphia Orphans Court will determine the foregoing question under the Pennsylvania law or under the New Jersey law is not necessary for me to pass upon. Suffice it to say that in order to determine the question of distribution it will be necessary to determine the vital question as to whether or not Mrs. Pendleton exercised her power of appointment as provided for in the 1882 trust indenture.
The mere fact that the proceedings aforesaid are pending would not deprive this court of its jurisdiction to proceed if, in fact, it has such jurisdiction, but it would furnish ample reason for this court's withholding the exercise of any jurisdiction it may have until the Pennsylvania courts have spoken. Of course, the Pennsylvania Company, as executor, is not a party to the Orphans Court proceedings in Philadelphia because as such executor it has no possible interest in the trust estate, for the reason that the trust assets are not distributable as part of decedent's estate and cannot come into the hands of the executors for that or any other purpose, bearing in mind that we do not have to consider claims of creditors, as heretofore noted.
The trust assets must, therefore, be distributed by the trustee either to those designated in testatrix' will as beneficiaries, or those mentioned in the trust indenture of 1882, in the event the court, having power to order distribution, decides that testatrix failed to exercise the power. See Seward v. Kaufman,119 N.J. Eq. 44; 180 Atl. Rep. 857.
We have, then, executors applying for instructions as to what disposition of the trust funds the trustee must make. We have a trustee, a resident of Pennsylvania, with trust funds in Pennsylvania and not a penny of it in New Jersey, and none of the trust estate may possibly come into the hands of the executors under any circumstance.
Under these circumstances, does this court have jurisdiction?
Having in mind that the donor of the trust was a resident of Philadelphia at the time of its creation, that the situs of the trust fund was Philadelphia at the time of its creation *Page 506 
and always has been and still is, and that the trustee is and at all times has been a resident of Philadelphia, we inquire what law governed at the time of the creation of the trust, and the answer is, of course, that of Pennsylvania. But it is argued that even so, the donor of the trust fund changed her domicile to New Jersey, in which state she died testate, and that her will was probated therein, and that the situs of the trust changed with the domicile.
The answer to this argument is found in Swetland v.Swetland, 105 N.J. Eq. 608; 149 Atl. Rep. 50, wherein the court said (at p. 614):
"It is suggested on behalf of the defendant trustee, that thesitus of a trust of personalty not testamentary in character is shifting and changes with each change in domicile of the trustee, which is accompanied by a change of the location of the trust property itself. I cannot accede to that doctrine; but irrespective of its soundness, it cannot be applied to such portion of the trust res as still remains in the jurisdiction of the original situs of the trust. Two general propositions,it seems to me, are clear: that a trust of personalty has itssitus at the domicile of the creator at the time of its creation,and that the courts of the situs of the trust have jurisdictionto direct its administration and to require the trustee toaccount; and that a trustee may be called upon to account in anyjurisdiction where he may be found, because a court of equityacts in personam."
It is true that in the above case it was the trustee whose domicile was changed, and here the domicile of the donor of the trust, but the rule of law laid down is "that a trust of personalty has its situs at the domicile of the creator at thetime of its creation," and the courts of the domiciliary estate have jurisdiction over it, and in the present case the trustres, all of it, "still remains in the jurisdiction of the original situs of the trust."
In Harlow v. Duryea (R.I.), 107 Atl. Rep. 98, the court held:
"Where donor of power at time of making contract conferring power of appointment was a resident of Massachusetts where contract was made and trust fund was located, held, *Page 507 
that question whether donee had exercised power should, though donor had acquired a domicile in another state, be determined by laws of Massachusetts under which a general residuary clause in a will operates as an exercise of a power to dispose of property by will." Mercer v. Buchanan, 132 Fed. Rep. 501, is to the same effect.
In the Swetland Case, supra, Vice-Chancellor Berry held, citing cases (at p. 613): "that the validity and situs of trusts inter vivos are determined by the law of the domicile of the settlor or creator at the date of the execution of the trustinstrument," upon, as he says, the same reasoning which results in the rule as to testamentary trusts, to which rule he refers in the preceding paragraph, at the bottom of page 612.
In Farnum v. Pennsylvania Co., c., 87 N.J. Eq. 108;99 Atl. Rep. 145, the donor was a resident of New Jersey. Under his will his daughter had power of appointment of a fund held in trust for her life. She died testate in Philadelphia, wherein her will was duly probated. It was insisted that the question as to whether the daughter had exercised the power of appointment by her will must be determined under Pennsylvania laws. Vice-Chancellor Backes (at p. 111) said:
"The donor, at the time of the creation of the power, was a resident of New Jersey. So was the donee. The power was created and exists by virtue of the laws of this state, and it is settled law that the exercise of powers conferred by will is controlled by the law of the testator's domicile, both as to the execution of the power and the interpretation of it."
The Vice-Chancellor cites many cases in support thereof, and such is unquestionably the law of this state.
In the Seward Case, supra, the power of appointment was created by will by a testator who resided and died in New Jersey. The donee named in the will died testate a resident of New York, and the court held "that the exercise of powers conferred by will is controlled by the law of testator's domicile, both as to interpretation of the power, and the execution of it." The basis of that holding was Farnum v. Pennsylvania Co., c., supra, and (at pp. 50 and 51) in the Seward Case the court said:
"The substituted trustee of the George F. Seward estate *Page 508 
will make distribution of the trust assets direct to the persons named as beneficiaries by Kate S. Seward under the power of appointment. The property subject to appointment is not subject to distribution as part of the estate of the donee. The executor of the estate of Kate S. Seward takes nothing in the property appointed. * * * If there had been no appointment, the trust fund would go according to the disposition of the donor, which in the instant case would be to the donor's children and the issue of any deceased child or children. The wife enjoyed the right merely to indicate the manner of disposition if she pleased to exercise that right. The fund remained with the husband's trustee to be disposed of as directed by his wife. Leggett v. Doremus,25 N.J. Eq. 122; McCook v. Mumby, 64 N.J. Eq. 394."
It is argued that while it is true that when a trust is created in state A, with power of appointment to another party who exercised the power while domiciled in state B, the courts held that the validity of the instrument executing the power of appointment is to be determined by the laws of state B, and the question of whether or not the instrument in fact executed the power of appointment is to be determined in state A, where the power was created, but that this rule does not apply where the creator of the power and the one exercising the power is one and the same person, as in the case under consideration. This argument does not hold good, at least under the facts and circumstances of this case. The donor of the power transferred the legal title of the trust to her trustee at the time of the execution of the trust indenture and the trust thereby created was irrevocable, leaving only to the donor the right to appoint a successor to the legal title. The question as to whether the donor exercised the power of appointment must be determined by the law of the situs of the trust at the time of its creation and it matters not that the creator of the trust died domiciled after having changed her residence from Pennsylvania to New Jersey. In Tudor v. Vail, 195 Mass. 18; 80 N.E. Rep. 590, the trust was created in Massachusetts, the donor died in Rhode Island, where his will was probated and where donor was domiciled at the time of his decease, and on the question as to whether *Page 509 
the donee had exercised the power of appointment reserved to him in the trust indenture, the court said (at p. 592):
"The fact that the testator was domiciled in Rhode Island when his will was proved does not affect the decision of the case. The common law of Rhode Island is presumed to be like that of Massachusetts, and if it were not, the law of this state would govern in the administration of a trust created and existing in Massachusetts."
The case of Radford v. Fidelity and Columbia Trust Co.,185 Ky. 453; 215 S.W. Rep. 285, is cited by those holding a contrary view to that above expressed, but as I view that decision, the question therein decided hinges largely on the interpretation of donee's will as to the construction of the wording used in the clause exercising the power with respect to the estate given to the husband, i.e., whether an absolute estate or merely a life estate. But if it be said, as it may well be, that that case holds that the question as to whether Mrs. Pendleton exercised her power of appointment in her will is to be determined by other than the law of Pennsylvania, this court does not agree with that finding.
I conclude that this court does not have jurisdiction to determine whether Mrs. Pendleton, by her last will and testament, exercised her power of appointment reserved in the 1882 indenture, excepting as it might do so by the application of the laws of the State of Pennsylvania, and that in view of the fact that a court of competent jurisdiction of that state now has before it for determination this very question, this court should not attempt to exercise any jurisdiction that it may have.
Complainant requests instruction as to matters not pertaining to the 1882 trust estate aforesaid.
There may be no doubt, under the evidence submitted, that testatrix, in the twenty-second paragraph of the fourth clause of her will, meant to designate as her beneficiary the "Atlantic County Society for the Prevention of Cruelty to Animals" and not "The Women's Society for the Prevention of Cruelty to Animals of Atlantic County."
As to the twenty-fourth paragraph of the fourth clause of the will, the evidence justifies a direction that the bequest *Page 510 
of $500 therein provided for be paid to "The Humane Society of New York" and not to the "American Humane Association."
As to the twenty-ninth paragraph of the fourth clause of the will, the executors are advised that under the evidence, testatrix intended the bequest therein provided for to go to the "General Lafayette Chapter of the Daughters of the American Revolution," which society is composed of citizens of Atlantic county, New Jersey, and of which decedent was a member.
A decree may be presented in accord herewith.